NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

LANNOM MANUFACTURING COM-
PANY, Respondent.

International Fur & Leather Workers,
Intervenor.

No. 12328.

United States Court of Appeals
Sixth Circuit.

April 8, 1957.

Stephen Leonard, Assoc. Gen. Counsel,
N. L. R. B. Washington, D. C., John C.

Getreu, Regional Director, Atlanta, Ga., for petitioner.

Judson Harwood, Nashville, Tenn., for respondent.

Harold I. Cammer, New York City, for intervenor.

Before SIMONS, Chief Judge, MILLER and STEWART, Circuit Judges.

SHACKELFORD MILLER, Jr., Circuit Judge.

The National Labor Relations Board seeks enforcement of its unfair labor practice order heretofore issued against the respondent, Lannom Manufacturing Company. The respondent moved to dismiss the petition on the ground that the charging union was not in compliance with Section 9(h) of the Labor Management Relations Act, Section 159(h), Title 29 U.S.C.A., which requires the filing of non-communist affidavits by each officer of such labor organization, in that its president was affiliated with the Communist party, that his affidavit to the contrary which he filed with the Board was false, and that he had been convicted of perjury for having filed such false affidavit. This Court sustained the motion to dismiss. N. L. R. B. v. Lannom Manufacturing Company, 6 Cir., 226 F. 2d 194. This ruling was reversed by the Supreme Court on the ground that "the sole sanction for the filing of a false affidavit under Section 9(h) is the criminal penalty imposed on the officer who files a false affidavit, not decompliance of the union nor the witholding of the benefits of the Act that are granted once the specified officers file their § 9(h) affidavits." Amalgamated Meat Cutters, etc. v. N. L. R. B., 352 U.S. 153, 77 S.Ct. 159, 160, 1 L.Ed.2d 207.

On the return of the case to this Court, the respondent has filed a motion to remand the proceeding to the Board on the ground that the Board erroneously rejected respondent's offer of evidence showing that Irving Potash, a vice-president of the Union, had not in fact filed the required affidavit. The respondent contends that the evidence which it of-fered would have shown that Potash was a member of the Communist party and rather than surrender his membership in the Communist party and file the necessary affidavit, he gave up his title of vice-president but retained the same job and performed the same duties that he had been performing prior to giving up his title. The Board opposed this motion on the ground, among others, that since the Constitution of the Union did not list the office of International vice-president, no affidavit was required from the holder of that position.

Before this motion was ruled upon, respondent filed a supplemental motion to remand the case to the Board on the ground that there was non-compliance with Section 9(h) in the following respects: (1) Article V of the Union's 1950 Constitution, a copy of which was annexed to the motion, provides for an International Executive Board and a Directing Committee of the International Executive Board, the members of which had failed to file the required affidavits; (2) Article VI of the Constitution provides for the position of Division President of the Fur Division and that Potash was exercising the powers of that office without having filed an affidavit. It is contended that the members of the International Executive Board, its Directing Committee, and Potash are in fact "officers" of the Union, although not so designated by the Constitution.

Article V of the Constitution of the Union carries the title "International Executive Board." It provides, in part, as follows: "Section 1. The International Executive Board shall consist of thirty-eight (38) members, inclusive of the International Officers who shall be members by virtue of their office. * * * Section 3. All International Executive Board members shall be elected by the International Convention on the last day of the Convention. * * * Section 9. The International Executive Board shall meet at least once every six months. Section 10. The International Executive Board shall: A. Enforce the Constitution and carry out the instructions of the Interna-

tional Convention and, between International Conventions, shall have the duty and power to govern and direct the affairs of the International Union. Other paragraphs of Section 10 provide that the Executive Board shall direct the acquisition and disposition of the real estate and property of the Union, grant through the President charters to newly-organized Local Unions, revoke or suspend the charter of any Local Union for specified causes, designate accountants to audit the books of any Local Union, to cause the books of the International Secretary-Treasurer to be audited at least semi-annually, fix the salaries of all officers, and fill vacancies in the office of an International Officer pending the election of a successor. Section 12 provides in part: "The International Executive Board shall have power to designate a sub-committee of its membership representing both divisions to be known as the Directing Committee of the International Executive Board. Such Directing Committee shall meet upon call by the International President as often as the affairs of the International Union shall require or warrant, and shall have full power to govern and direct the affairs of the International Union between meetings of the International Executive Board. * * *"

Article VI of the Constitution of the Union carries the title "International Officers." It reads, in part, as follows: "Section 1. The officers of the International Union shall be the International President, the International Secretary-Treasurer, and the President and Secretary-Treasurer of each Division, and no others. * * *"

The Board filed its Opposition to the supplemental motion, in which it admitted the existence and correctness of Articles V and VI of the Constitution of the Union as claimed by the respondent and that the members of the International Executive Board and the Directing Committee of the Executive Board listed in Article V did not file Section 9(h) affidavits except insofar as any one of them was also an International officer. It also

stated that Section 9(h) affidavits were filed by each International officer listed in Article VI of the Constitution, namely, International President, International Secretary-Treasurer, President of the Fur Workers Division, Secretary-Treasurer of the Fur Workers Division, President of the Leather Division, and Secretary-Treasurer of the Leather Division. It also gave the names of these officers, no one of which was Potash.

Respondent thereupon filed its alternate motion to dismiss the petition on the ground that from the admissions contained in the Board's Opposition to respondent's supplemental motion to remand, it was shown without dispute that a large number of persons occupying positions identified as officers, namely, the members of the International Executive Board and its Directing Committee, failed to file the affidavits required by Section 9(h) of the Act.

As a preliminary question, it is the Board's position that the respondent's present contention goes beyond its original offer of proof before the Board, which merely alleged that the affidavit of the Union's president was false and that Potash was a "concealed" International vice-president. It is contended that consideration of the question by this Court is barred by Section 10(e) of the Act; that even if not barred by Section 10(e), the question sought to be raised by respondent may not properly be litigated in an unfair labor practice proceeding. N. L. R. B. v. Vulcan Forging Co., 6 Cir., 188 F.2d 927, 929–930; N. L. R. B. v. Sharples Chemicals, Inc., 6 Cir., 209 F.2d 645, 650. If the motions involved the taking of proof upon a factual issue and a ruling upon the issue, the Board's contention would have merit. However, upon the basis of the facts admitted by the Board, respondent's motions raise a jurisdictional question, which can be decided as a matter of law upon undisputed facts, and should be considered by the Court at this stage of the proceedings. N. L. R. B. v. Highland Park Manufacturing Co., 341 U.S. 322, 325, 71 S.Ct. 758, 95 L.Ed. 969; N. L. R. B. v. Dant

& Russell, Ltd., 344 U.S. 375, 73 S.Ct. 375, 97 L.Ed. 407; N. L. R. B. v. Coca-Cola Bottling Co. of Louisville, Inc., 350 U.S. 264, 267–268, 76 S.Ct. 383, 100 L.Ed. 285. Goodman Manufacturing Co. v. N. L. R. B., 7 Cir., 234 F.2d 775, 776, certiorari denied United Elec., Radio, and Mach. Workers of America (UE) v. Goodman Mfg. Co., 352 U.S. 872, 77 S.Ct. 94, 1 L.Ed.2d 77.

On the undisputed facts before us Potash was not one of those designated as officers by the Constitution. Nor, did the Constitution at any place state that the members of the International Executive Board and its Directing Committee were officers of the Union. Article VI, by the use of the words "and no others" expressly excludes them from its "officers." The question presented is whether those facts are controlling in the matter, or can we look into the scope of activities of these various persons and the powers and duties conferred upon them by the Constitution and conclude that they are in fact "officers" of the Union by the application of the functional test, although they are not "officers" in the constitutional sense. This question was considered by the Supreme Court in N. L. R. B. v. Coca-Cola Bottling Co., supra, 350 U.S. 264, 268–269, 76 S.Ct. 383, 386, 100 L.Ed. 285, in which it ruled that the word "officers" in the statute is a word of familiar usage and is to be construed in accordance with the meaning given to it by the ordinary man. It said: "'Officers' normally means those who hold defined offices. It does not mean the boys in the back room or other agencies of invisible government, whether in politics or in the trade-union movement." It pointed out that the statute differentiates between "officers" and "agents" of labor organizations.

Respondent relies strongly upon Goodman Manufacturing Co. v. N. L. R. B., supra, 7 Cir., 234 F.2d 775, certiorari denied United Elec., Radio, and Mach. Workers of America (UE) v. Goodman Mfg. Co., 352 U.S. 872, 77 S.Ct. 94, 1 L. Ed.2d 77, where it was held that "trustees" and "secretaries" of the International Union involved in that case were "officers" within the scope and intendment of Section 9(h) of the Act. This ruling by the Court of Appeals was subsequent to and with recognition of the ruling of the Supreme Court in the Coca-Cola Bottling Co. case. Having in mind the oft repeated admonition that denial of certiorari is not to be considered as an affirmance of the ruling on the merits, we do not consider this case as in any way modifying the rule expressed in the Coca-Cola Bottling Co. case. The Court of Appeals distinguished the two cases by reason of their different factual situations, pointing out that Article V of the Constitution there being considered, as it related to the issue, was ambiguous which made it proper for the Court to resort to other provisions of the Constitution for the purpose of ascertaining the official authority or power bestowed upon "secretaries" and "trustees."

In the present case, Article VI dealing with International Officers is not ambiguous. It specifically describes them and further states "and no others." Applying the constitutional test, which was approved in N. L. R. B. v. Coca-Cola Bottling Co., supra, instead of the functional test urged upon us by respondent, the members of the International Executive Board, its Directing Committee, and Potash were not "officers" of the Union within the meaning of Section 9(h) of the Act.

The motion of the respondent to remand the case to the Board and its alternate motion to dismiss the petition are overruled.