## Vidmar *v.* Sigmund, Appellant.

356

Argued April 14, 1960. Before RHODES, P. J., GUN-
THER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ.
(MONTGOMERY, J., absent).

*Sidney Baker,* with him *Krause and Boreman,* for appellant.

*James A. Danahey,* for appellees.

OPINION BY WATKINS, J., June 15, 1960:

This is an appeal by Margaret M. Sigmund, administratrix of the Estate of Harry E. Sigmund, Jr., also known as Harry Sigmund, the defendant-appellant, from the order of the Court of Common Pleas of Allegheny County granting a new trial to Pauline Vidmar and Debra Lynn Sigmund, her minor daughter.

Pauline Vidmar, in her own right, and as guardian for her daughter, Debra Lynn Sigmund, brought this action in trespass to recover damages for personal injuries inflicted on them, as the result of an assault and battery by Harry Sigmund, the child's father, since deceased. At the trial of the case, the court below directed a verdict in favor of the appellant and against the minor appellee on the theory of in loco parentis. Pauline Vidmar was awarded damages of $285.57 by the jury. A motion for a new trial for both was filed. In the case of the minor it was argued that the verdict was against the weight of the evidence and contrary to law, and in the case of the mother, that the verdict was capricious and inadequate. The court below agreed with the appellees and awarded a new trial to each of them. This appeal followed.

Harry Sigmund, deceased, and Pauline Vidmar, had for a long time maintained a meretricious relationship. Pauline had two natural daughters as a result of this relationship, Harriet Medved and Debra Lynn Sigmund. On April 24, 1954, the decedent and the appellee had a fight in their home in which she was severely beaten. Harriet who was thirteen at the time and eighteen at

the time of the trial was the only witness to the occurrences involving mother and daughter.

She testified that she was awakened by her mother's scream and heard her call out, "please, please don't hit me"; that her mother ran past her to the kitchen and she was covered with blood; that he "ran after her in the kitchen and he grabbed her and kept beating her." She got away again "and my father caught her in the outside hall." He caught her and hit her "so hard that she stumbled backwards . . . hit a chair . . . and he pushed her over a chair with his knee in her stomach and kept hitting her with his fist." Harriet had picked up the infant Debra from her crib and was carrying her at this time. She tried to get her father to stop beating her mother but was unsuccessful. She took the child back to her crib and secured her father's gun from the bedroom, she pointed the gun at her father and told him to stop beating her mother. He paid no attention to the gun but came toward her cursing and threatening her. She retreated to her room, locked the door and put away the gun. She then picked up Debra and hearing her father come, retreated with the child to the steps in order to leave the apartment. Her father caught up with her as she was reaching the head of the stairway. He was cursing and abusing her with vulgar names, grabbed her by the arm and pushed her so that she reached the stairway, stumbled down several steps, broke her heel and the child, while still in her arms, was thrown against the wall striking her head. It is conceded that Debra suffered an aggravation of a skull fracture.

The appellant contends that the directed verdict should stand against the minor, not only on the ground that the father was immune from an action by an unemancipated minor child, but, that the father had a parental privilege to punish and chastise the child for pointing the gun at him and was not responsible for

the injury to Debra because it, therefore, was not the logical and foreseeable consequence of an illegal act.

Judge MONTGOMERY, the trial judge below, who also wrote the opinion for the court en banc, and who is now a member of this Court, held: "The case in behalf of the minor plaintiff was taken from the jury on the basis that the decedent was in loco parentis with the child and therefore immune from suit. It has now come to our attention that this shield of immunity is terminated upon the death of the person so protected: Parks v. Parks, 390 Pa. 287 (296), citing Kaczorowski v. Kalkosinski, 321 Pa. 438. Defendant contends however, that even if no immunity protects the decedent's actions he was nevertheless privileged in pushing Harriet, his excuse being that he was chastising and punishing the child for previously pointing a gun at him. Under the present circumstances we do not feel that we can say as a matter of law or conclusive fact that the decedent's actions toward Harriet were either motivated by his interest in correcting the child's behavior or purely inspired by personal malice. This is a matter for the jury."

With this we agree and we do not have to consider whether the immunity applies to the illicit relationship herein existing as affecting the rights of the illegitimate child. There is certainly sufficient evidence in this record to go to the jury to determine whether this minor was injured as the result of an assault and battery by the father or as the result of the exercise of the parental privilege of properly chastising his daughter. It should be noted that the illegal act might be the original assault and battery against the mother as well as the assault and battery against the daughter. We can't help but agree with the appellee that it is almost inconceivable that Harry Sigmund, in the middle of a brutal beating of the mother of these children, as disclosed by this record, "suddenly ceased his brutality;

and in the exercise of calm, and just, parental concern for the conduct of a thirteen year old girl, who had just witnessed this brutal beating, came to her at the head of a stairway, down which she obviously was attempting to escape, and, while cursing her, pushed her. The inferences from these facts are inescapable."

As the result of the assault and battery, Pauline Vidmar was hospitalized from April 23, 1954 to May 7, 1954. Dr. Bondi, her physician, testified she had sustained multiple contusions and abrasions of the face, head, body and extremities and a fractured face on the left side. He testified that he reduced the fracture manually, generally treated her for pain and shock. She had "quite a great deal of pain." He testified that the pain continued into 1956 in the face area, neck, headaches and pain of the abdominal wall and lower back and that he referred her to an orthopedic specialist for a garment to assist her back condition. The verdict of $285.57 represented the balance due for actual expenses.

The appellant contends that the situation calls for mitigation of damages because the evidence indicates a fight between the parties suggesting provocation. The husband weighed about the same as the wife; was older; and was in ill health. There was testimony that he was scratched about the face. It is true, however, that it was the wife who was taken to the hospital immediately after the trouble. In answer to the contention of the appellant, however, the court below charged, without specific objection, "Now, that is the extent of her testimony as I recall it briefly,—And I say to you frankly, it is free of any indication of provocation on the part of Pauline, and that is that it indicates strongly that even if she had provoked it that she even as a provocator was attempting to get away and was pursued by Harry Sigmund, and would indicate the use of more force than was necessary even though he had been pro-

voked. And, of course, as I say, there is no evidence on the point of provocation." Judge MONTGOMERY further bolsters his position set forth in the charge, where he says in his opinion, "The only testimony describing the events of a fight comes from the plaintiff. In reviewing it as well as the entire record we fail to find any evidence indicating provocation on her part."

In view of the evidence the award of $285.57, the balance of her actual expenses, does seem to be grossly inadequate and as the appellees suggest, may possibly be explained by the jury's visiting their moral indignation at the sordid relationship between the parties, on the mother. It might, too, be noted that the direction of a verdict against the minor plaintiff may have had an effect.

It is apparent that the appellant has a very heavy burden in this appeal. "Before we will reverse, the appellant must be able to show that the trial court was guilty of a palpable abuse of discretion or acted on an erroneous rule of law which, in the circumstances, controlled the outcome of the case and is certified by the trial court as the sole reason for the granting of a new trial." *Jess v. McMurray,* 394 Pa. 526, 528, 147 A. 2d 420 (1959). See also: *Mohr v. Plotkin,* 186 Pa. Superior Ct. 615, 142 A. 2d 414 (1958).

While it is true that appellate courts do not abdicate their powers of review, and it is their duty to review the evidence to see whether there is a clear case of injustice, *Eliza v. Chovan,* 396 Pa. 112, 152 A. 2d 238 (1959), where, as here, the verdict is clearly nominal and bears no resemblance to the damages proved, is palpably insufficient, inadequate and capricious, the court properly exercised its judicial discretion in granting a new trial.

Order affirmed.

MONTGOMERY, J., took no part in the consideration or decision of this case.