71 N.J. Super. 294 (1962)
176 A.2d 818
OLVEIRA PALCSEY, AN INFANT, AND LINDA PALCSEY, AN INFANT, BY THEIR GUARDIAN AD LITEM, ELVIRA PALCSEY, AND ELVIRA PALCSEY, INDIVIDUALLY, PLAINTIFFS,
v.
MARY TEPPER, SOLE EXECUTRIX OF THE ESTATE OF JOSEPH PALCSEY, DECEASED, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided January 5, 1962.
*295 Mr. Harold G. Smith argued the cause for the plaintiffs (Messrs. Wilentz, Goldman, Spitzer & Sills, attorneys).
Mr. Richard D. Porter argued the cause for the defendant (Mr. Frank P. Zimmer, attorney).
MARIANO, J.S.C.
Defendant seeks an order to strike plaintiffs' complaint on the ground that it fails to state a cause of action upon which relief can be granted.
On November 9, 1958 the infant plaintiffs, Olveira Palcsey and Linda Palcsey, unemancipated minors, were passengers in a car owned and operated by their father, Joseph Palcsey, when a collision occurred in which their father was killed and the infants injured. Suit was instituted on behalf of the infants by their mother as quardian ad litem against Mary Tepper as executrix of the estate of Joseph Palcsey, the deceased parent, for damages suffered as a result of their father's simple negligence.
The question presented by this motion is: Does the doctrine of immunity from suit between unemancipated minor children and their parents, which exists during the life of the family relationship, extend to and protect the personal representative of the deceased member of the family?
A large majority of the courts of the United States, including New Jersey, are in accord with the firmly established rule that an unemancipated minor child cannot maintain an action against its living parents for damages for personal injuries as a result of the parents' simple negligence. *296 Reingold v. Reingold, 115 N.J.L. 532 (E. & A. 1935); Hastings v. Hastings, 33 N.J. 247 (1960); Parks v. Parks, 390 Pa. 287, 135 A.2d 65 (Sup. Ct. 1957); also see Annotation 19 A.L.R.2d 423, 462.
In the Hastings case, at page 251, the New Jersey Supreme Court stated the basic policy reasons for the rule which grants a living parent immunity from suit by his minor child by quoting with approval the following language from the Pennsylvania case of Parks v. Parks, supra:
"It is a rule based on the sound principle of public policy to promote family unity and avoid family discord and disturbance, it prevents possible collusive action between parent and child in situations where the liability of either parent or child is covered by insurance and it is in line with the great weight of judicial authority represented by practically every court of every state in this country."
It is evident from the foregoing that the question is not one of the absence of duty owed by a parent to his minor child, but instead is one of immunity or disability from suit. The cause of action exists as of the date of the wrongdoing but the courts have interposed a shield of immunity between the family members where the family relationship is still intact. Parks v. Parks, at page 71; cf. Long v. Landy, 35 N.J. 44 (1961). This precise point was made abundantly clear by Mr. Justice Hall in the Hastings case when he stated at page 250:
"The question is not one of the absence of a duty of reasonable care owed by the father to his child, but rather of immunity from suit thereon. Matters of immunity must be determined, in the absence of specific legislation, on the basis of policy or, perhaps more accurately, on the weighing of competing policies. Here we think the weight of a combination of policies dictates the result. In situations other than the precise one before us, consideration of the policies in the light of the specific facts may lead to different results, but it will be time enough to announce a conclusion on them when the occasion is specifically presented to us."
Justice Hall then continued to state the policy factors which he felt justified the imposition of immunity where *297 the family remained intact with parties surviving, namely, the promotion of family unity, avoidance of family discord, and the prevention of possible collusion between the surviving parent and child.
The above rule of law has been and still is being condemned in many thoughtful professorial and student writings as well as in academic discussions, especially where a policy of liability insurance is in existence.
The nature of the common law requires that each time a rule of law is applied it be carefully scrutinized to make certain that the conditions and the needs of time have not so changed as to make further application of it the instrument of injustice. State v. Culver, 23 N.J. 495, 505 (1957); Long v. Landy, supra. When the policy behind a rule no longer exists the rule should disappear. See Long v. Landy.
It is self-evident that if the family relationship no longer exists, having been dissolved by death, then the public policy consideration which supports the rule of immunity likewise no longer exists. Vide, Long and Parks.
My research has not revealed any New Jersey case on point. Our sister state of Pennsylvania has, however, definitely and clearly spoken regarding the matter sub judice. Factually the Parks case involved a suit by a minor child against her mother who was still living, yet the Supreme Court specially stated, at page 71 of 135 A.2d as follows:
"We have, however, recognized that the doctrine of intrafamily immunity from suit by a member of the family expires upon the death of the person protected and does not extend to a decedent's estate for the reason that death terminates the family relationship and there is no longer a relationship in which the state or public policy has an interest. Kaczorowski v. Kalkosinski, 321 Pa. 438, 184 A. 663, 104 A.L.R. 1267; David v. Smith, D.C., 126 F. Supp. 497. Thus, although there may be immunity from suit between parent and child during life, the immunity does not extend to the personal representative of a deceased parent or child."
*298 It is obvious that the Pennsylvania Supreme Court makes a sharp distinction between a suit against a living parent and one against the estate of a deceased parent, denying the first and permitting the latter. See also Davis v. Smith, 126 F. Supp. 497 (E.D. Pa. 1954); Kaczorowski v. Kalkosinski, 321 Pa. 438, 184 A. 663, 104 A.L.R. 1267 (Sup. Ct. 1936); Vidmar v. Sigmond, 192 Pa. Super. 355, 162 A.2d 15 (Super. Ct. 1960).
In Davis v. Smith, supra, the federal court, applying Pennsylvania law, held that a suit by a minor unemancipated child through its mother could be maintained against the personal representative of the minor's deceased father. The court, in a most scholarly and exhaustive opinion, carefully distinguished between a suit by a minor against its living parents and one against the personal representative of a deceased parent, stating 126 F. Supp., at page 506:
"The Pennsylvania decisions, then, have held that although there may be immunity from suit between husband and wife and between child and parent during the life of the family relationship, the immunity does not extend to and protect the personal representative of the deceased member of the family. Thus where a parent or child dies or the entire family unit is dissolved, there is then no relationship that public policy need protect; the reason for the doctrine is gone and the cloak of immunity disappears. In the instant case the father's death destroyed the family relationship between father and son. There is no longer any relationship in which the state or public policy has any interest."
The Parks case also supplied the basis for the leading case of Johnson v. Peoples First National Bank & Trust Co., 394 Pa. 116, 145 A.2d 716 (Sup. Ct. 1958), which held that a wife could maintain an action against her deceased husband's estate for injuries sustained as a result of her husband's negligence.
In Johnson the Pennsylvania Supreme Court established clearly the principle that when the policy reasons for the imposition of an interspousal immunity from suit no longer exist, such a suit may be maintained. Thus, the court held that while a wife cannot sue her living husband *299 during coverture, a widow could maintain a suit against her deceased husband's personal representative for injuries received as a result of her husband's negligent operation of an automobile in which she was riding.
Our own Supreme Court, in the Long case, has adopted the rule of the Johnson case. The reasoning and rationale of Long is absolutely applicable to the case here presented. There is no difference in principle between an intraspousal and an intrafamily immunity. Both are supported by almost identical policy reasons. Where, as in Long v. Landy, the family relationship is destroyed by the death of the parent tortfeasor, the special fear of collusion is eliminated and there can be no weakening of parental control nor any disruptance of family harmony.
As pointed out by our own Supreme Court, when the reason for a rule no longer exists, logic demands that the rule give way to reason.
The Long case is consequently authority, a fortiori, for allowance of a suit in tort by an unemancipated child against the estate of its deceased parent. The application of any other rule would be an injustice since none of the moral or legal concepts for the rule of intraspousal or intrafamily immunity applies to the situation under consideration.
The motion is denied and counsel may present an order in accordance with this opinion.