406 P.2d 409

**NEIL B. McGINNIS EQUIPMENT CO.,**
an Arizona corporation, Appellant,

v.

**W. J. HENSON and Jane Doe Henson, doing
business as W. J. Henson Con-
tracting Co., Appellees.***

**No. I CA–CIV 63.**

Court of Appeals of Arizona.

Oct. 18, 1965.

Jennings, Strouss, Salmon & Trask, by William F. Haug, Phoenix, for appellant.

Hill, Savoy & Flickinger, Phoenix, Anis Mitchell, Scottsdale, for appellees.

STEVENS, Chief Judge.

This action is concerned with the Uniform Conditional Sales Act. The McGinnis Company, the conditional seller, filed suit against Mr. and Mrs. Henson, the condi-

---

* This appeal was filed with the Arizona Supreme Court and assigned that Court's number 7979. The matter was referred to this Court pursuant to Section 12–120.-23 A.R.S.

tional buyers, seeking judgment for a claimed deficiency. Mr. and Mrs. Henson filed a counterclaim urging that the resale was not conducted as required by law and in their counterclaim sought damages for the statutory 25%. The facts in relation to the counterclaim are not in dispute. The parties filed their respective motions for summary judgment in relation to the counterclaim and the trial court resolved the issues as a matter of law.

Contracts of conditional sale in Arizona are governed by the Uniform Conditional Sales Act which Arizona adopted in 1919. This act now appears in the Arizona Revised Statutes as Sections 44–301 to 44–330, inclusive.

The plaintiff sold a tractor to the Hensons on a contract of conditional sale. The purchase price was the sum of $58,416.42, the down payment being the sum of $18,394.49, the unpaid principal balance of $40,021.93 being represented by the contract of conditional sale. The conditional buyers became in arrears in their payments, and efforts were made to enable the buyers to refinance the contract. These efforts were not successful, and on Wednesday the 5th day of February 1962, the conditional seller repossessed the tractor. On the 7th day of February 1962, the conditional seller gave notice of repossession to the conditional buyers which notice advised them of their right to reinstate the contract within 10 days, the notice being given pursuant to the provisions of § 44–318. The contract was not brought up to date and on Tuesday, the 20th day of February, the conditional seller gave notice of resale, the notice specifying that the resale was scheduled for the hour of 10:00 in the morning of Monday, the 5th day of March. § 44–319 requires that "[t]he seller shall give to the buyer" notice of the sale and this was accomplished. The same section further provides that "[t]he seller shall also give notice of the sale" by posting and this was accomplished. In the event of the publication of the notice, the statute then existing required that "the seller shall also give

notice of the sale at least five days before the sale by publication in a newspaper * * *." On the 27th day of February the notice was published in a weekly newspaper. There is no question presented to this Court in relation to the fact that the paper in which the notice was published fully qualified under the statute.

As of the time of the repossession and of the sale, more than $500 of the purchase price had been paid and less than 50% of the purchase price had been paid. The conditional buyers did not demand a resale (as was their privilege under § 44–320) and, therefore the resale was voluntary on the part of the seller. Having elected to resell, the notice requirements of § 44–319 applied to the manner of the conducting of the sale. Said section allows the conditional seller to bid for the goods at the resale and the plaintiff (seller) was the bidder at the resale, bidding a sum less than the amount due on the contract. The conditional seller then filed the action which we are now considering, seeking judgment for the claimed deficiency. The conditional buyers set forth that they had paid $26,973.24 of the purchase price and relying upon § 44–325 they sought judgment on their counterclaim for 25% thereof that is to say, the sum of $6,743.31. The trial court entered judgment for them in that sum and the plaintiff appeals.

§ 44–329 admonishes that:

"This chapter shall be so interpreted and construed as to effectuate its general purpose to make uniform the law to those states which enact it."

Between the time of the resale on the 5th day of March 1962 and the time of the presentation of the case to this Court, § 44–319 in relation to publication was amended by adding the word "one" so that the crucial portion of the above quoted language of § 44–319 insofar as it relates to publication, now reads:

"* * * at least five days before the sale by one publication in a newspaper * * *"

As with most states, Arizona has general statutes, our general statute in relation to the computation of time being § 1–243, A.R.S. which reads as follows:

"The time in which *an act is required to be done* shall be computed by excluding the first day and including the last day, unless the last day is a holiday, and then it is also excluded." (Emphasis supplied.)

§ 1–301, A.R.S. is another general statute which provides that Sunday is a holiday. The sale was scheduled for Monday the 5th of March and quite obviously the preceding day was Sunday the 4th day of March, a holiday.

■ We agree with the guide lines set forth by the Wisconsin Supreme Court in the 1933 case of People's Savings & Trust Co. v. Munsert reported in 212 Wis. 449, 249 N.W. at page 527, 250 N.W. 385, 88 A.L.R. 1306. These guide lines relating to the manner of construing or interpreting a uniform law are (249 N.W. 531 page 531):

" * * * The Uniform Conditional Sales Act, * * * though adopted by the Legislature, was not in fact framed by it. The act was drafted by the Commission on Uniform Laws, submitted as drawn to the Legislature, and adopted by the latter without amendment. In construing a uniform law, the meaning of which is not clear, the intention of those who drafted it, *if that intention may be ascertained*, should be given controlling consideration, else the desired uniformity will not result. Futile, indeed, is the passage of uniform laws by the several states if the courts are to construe them differently. Uniform acts contain provisions similar to section 122.30, which provides: 'This chapter shall be so interpreted and construed as to effectuate its general purpose to make uniform the law of those states which enact it.' "

See also Castaneda v. National Cash Register Company, 43 Ariz. 119, 29 P.2d 730 (1934).

Not all courts have confined themselves to the language of the Uniform Conditional Sales Act in determining the meaning of the Uniform Act and this is especially true in relation to the matter of computing time. Hence it is important to consider the particular language of the general statutes being relied upon by the courts whose opinions we are studying. For example, Section 20 of the General Construction Laws of the State of New York is quoted in the 1934 Conditional Sale Contract decision of Uptown Transp. Corporation v. Fisk Discount Corporation, 150 Misc. 829, 270 N.Y. S. 273. The New York statute relates to the period "from a certain day in which or after or before which an act is authorized or required to be done." The Arizona Statute on time relates to "[t]he time in which an act is required to be done."

There are sections of the act which allow a conditional buyer a specified number of days within which to take affirmative action as for example, under § 44–319 the buyer has 10 days within which to redeem after notice of retaking of possession and under § 44–320, he has 10 days within which to demand that the property be resold. These are sections which authorize the conditional buyer to take affirmative action which has the effect of changing the predetermined course of the conditional seller. In each event the conditional buyer would have the full last day within which to act.

■ In connection with the resale, however, there is no affirmative act for the conditional buyer to perform, there is no action which he can take to forestall the sale, the time period involved is a mere passage of time in relation to an act which the conditional seller will perform and, therefore, § 1–243 is not applicable even should we use the general law as distinguished from confining ourselves to an interpretation of the Uniform Act alone. § 1–243 excludes holidays in computing the time in which "an act" is to be done by the person to whom the notice is given. Therefore, using the conventional method of computing time, that is excluding the date

of publication, the 27th day of February, we do have "at least five days notice", these being the 28th day of February and the 1st, 2nd, 3rd and 4th days of March, even though the 4th day of March is a Sunday. It is important to remember that § 44–319 provides for two types of notice, one being a notice which the seller gives to the buyer and the other being a general notice, one addressed to the public at large. True the conditional buyer has the right to require that both notices comply with the statute. We hold that the publication in this matter was "at least five days before the sale". Under these circumstances we do not need to decide which line of authority to follow in relation to the proper interpretation of the phrase "at least five days notice" that is to say, whether it means full five days between the date of publication and the date of sale as we have in this case, or whether the sale can take place some time during the fifth day.

Between the time of the decision by the trial court and the argument of this case, this Court entered its opinion in the case of Bogard GMC Company v. Abril, 1 Ariz. App. 55, 399 P.2d 189 (1965), said opinion having been rendered by Division Two of this Court. In Bogard as in the case, at bar, there was a single publication of the notice and the repossession as well as the sale took place prior to the amendment of § 44–319. The conclusion reached in Bogard is that the proper interpretation of the publication aspect of § 44–319 as the same existed prior to the amendment and at the time of sale was governed by § 39–204, A.R.S. Subsection B par. 1 of § 39–204 reads as follows:

"If in a weekly newspaper, once each week for four consecutive weeks, with not less than twenty days intervening between the first and last publication."

and Subsection B, par. 2 thereof contains the following language:

"If in a daily newspaper, six consecutive times."

The appellees in the case now before us urge that the Judges of Division One of the Court of Appeals are bound by Bogard. Even though the Court of Appeals sits in two independent Divisions, it is nevertheless, a single Court and the argument that we are bound by Bogard is one of great merit. When we disagree with a prior decision of our Court whether rendered by our own Division or by our fellow Judges in Division Two, we should do so only upon the most cogent of reasons being presented. The appellant urges that these reasons exist in the case which we have under consideration.

At the oral argument, the appellant informed the Court that the briefs in Bogard have been studied and that they are silent in relation to an important rule of statutory construction which rule was not discussed in Bogard. The appellant urges that the record fails to reflect that the Judges of Division Two were fully informed by counsel as to the rule that when a statute is amended for the purpose of clarifying the statute, the statute as it existed before the amendment must be read in the light of the statute after the amendment. In the case of General Petroleum Corporation of California v. Smith, 62 Ariz. 239, 157 P.2d 356, 158 A.L.R. 364 (1945), the Arizona Supreme Court had under consideration an event which took place in 1942 and a 1943 amendment to the applicable statute. The Court stated on page 247 of the Arizona Reports, on page 360 of 157 P.2d, that where an ambiguity exists, "* * * the court may look to subsequent changes of the law by the legislature in support of its own view of the prior act." The Supreme Court quoted an earlier Arizona case as follows:

"In Moore v. Pleasant Hasler Const. Co., 51 Ariz. 40, 76 P.2d 225, this court held that an amendment which in effect construes and clarifies a prior statute must be accepted as the legislative declaration of the meaning of the original act. The rule seems to be well established that the interpretation of a statute by the legislative department goes far to remove doubt as to the meaning of the law. The court has

the right and the duty, in arriving at the correct meaning of a prior statute, to consider subsequent legislation. 50 Am.Jur. 328, sec. 337, title 'Statutes' ".

In the case of City of Mesa v. Killingsworth, 96 Ariz. 290, 394 P.2d 410 (1964), the Court stated on page 297 of the Arizona Reports, on page 414 of 394 P.2d:

"The legislature has now clearly expressed its intention consistent with the construction which we believe should be placed on the former statutes. An amendment which, in effect, construes and clarifies a prior statute will be accepted as the legislative declaration of the original act." (Citation omitted.)

The appellant urges that after a diligent search, it has found no case dealing with contracts of conditional sale which construes the publication requirement as does Bogard. Of the cases we have read wherein there was a factual recitation of the publication aspect of the litigation under statutory language similar to ours, we do not recall having read any case which contains a recitation other than that of a single publication. If we are to go beyond the Uniform Act for interpretation, then it would be well to refer to our own statutes on the subject of chattel mortgages in view of the fact that the purpose of a chattel mortgage as a security transaction is quite similar to the purpose of a conditional sales contract as a security transaction. In relation to the sale in a chattel mortgage situation, A.R.S. § 33–757, subsec. E provides for posting and that the notice be "published once in a paper of general circulation". We are unable to agree with the decision in Bogard and we hold that one publication in a newspaper was sufficient to meet the statutory requirement during the year 1962.

This cause is reversed with directions to vacate the judgment in favor of the counterclaimants; to deny the counterclaimants' motion for summary judgment in relation to their counterclaim; to grant the plaintiff's motion for summary judgment in relation to the counterclaim; to vacate the order dismissing the plaintiff's complaint; to reinstate the plaintiff's complaint; and to take such other and further action as is consistent with this opinion.

CAMERON and DONOFRIO, JJ., concurring.