435 P.2d 736

**Joe R. PURCELL, Guardian ad Litem for Whit Frazer, Wesley Frazer and Tyson Frazer, minors, Appellants,**

**v.**

**John V. FRAZER, Jr., Appellee.**

**No. 2 CA–CIV 372.**

Court of Appeals of Arizona.

Dec. 29, 1967.

Rehearing Denied Feb. 7, 1968.

Review Denied March 19, 1968.

Quigley & Lamont, by James E. Quigley, Tucson, for appellants.

Murphy & Vinson, by Carl E. Hazlett, Tucson, for appellee.

MOLLOY, Judge.

This appeal raises the question of whether a parent has an immunity from liability to an unemancipated child living in the home for negligence committed in the pursuit of a family activity.

The plaintiff's minor children of the ages of 5 years, 4 years, and 17 months, respectively, were passengers in a car driven by the defendant, their father, when there was a serious accident. The complaint is filed on behalf of these minors by a guardian ad litem. The complaint charges "negligent driving" on the part of the father. In opposition to the motion to dismiss the complaint,[1] an affidavit of the defendant-father was submitted by the plaintiffs which stated:

> "That he is protected by a contract of insurance from any liability which he might incur by reason of an adverse judgment in said action."

The father indicated in his affidavit that he was "amicable" to having a judgment entered against him in the event the judge or jury might find him to have been negligent as alleged.

The doctrine of parental immunity from tort actions brought by unemancipated minors has been the matter of seething dispute in the courts and law schools of this country since the publication of an article by Professor McCurdy, of Harvard Law School, Torts Between Persons in Domestic Relation, 43 Harv.L.Rev. 1030 (1930). At

---

1. Parties and court have apparently treated the motion to dismiss as a motion for summary judgment, as permitted by Rule 12(b), R.Civ.P., 16 A.R.S.

the time of Professor McCurdy's article, only one case [2] could be found recognizing a cause of action in negligence by an unemancipated child against a natural parent, 43 Harv.L.Rev., at 1071. At the time of this article, there was a substantial body of American law following the decision of Hewlett v. George, 68 Miss. 703, 9 So. 885, 13 L.R.A. 682 (1891), which held (citing no authorities):

"But so long as the parent is under obligation to care for, guide, and control, and the child is under reciprocal obligation to aid and comfort and obey, no such action as this can be maintained. The peace of society, and of the families composing society, and a sound public policy, designed to subserve the repose of families and the best interests of society, forbid to the minor child a right to appear in court in the assertion of a claim to civil redress for personal injuries suffered at the hands of the parent. The state, through its criminal laws, will give the minor child protection from parental violence and wrongdoing, and this is all the child can be heard to demand." 9 So. at 887.

Professor McCurdy cogently attacks the blanket immunity recognized in *Hewlett*; at the same time, he recognized that the intimate relationship between parent and child recommended a special approach to tort actions between them:

"The parent, as part of his duty to discipline, has a right to the minor child's services, and is as a matter of substance, whatever may be the means of enforcement, under a duty to support. Consequently, a personal injury to a minor child that is temporary in the sense that it does not impair its earning power beyond minority or impose an additional burden of support beyond minority, can not ordinarily cause pecuniary loss to the child. If a third person were tortiously to cause personal injury to a minor child,

the parent would have a cause of action in his own right for the injury to his right to service and to his duty to support. The child would have a cause of action (during minority by his next friend) for pain, suffering, and injury to feelings, and for the impairment of his earning power beyond minority. If the parent causes the injury, he has injured only himself in respect to services and support, and in an action he would be both plaintiff and defendant. If the injury does not extend in its pecuniary effects beyond minority, there is perhaps no good purpose to be served in permitting an action against the parent for pain, suffering, and injury to feelings, unsupported by pecuniary damage, since these matters may well be considered as risks of the relation, although such action may be maintained against third persons, at least for intentional aggressions." 43 Harv.L.Rev. at 1078.

The McCurdy article, in discussing five possible solutions to the problem of child-versus-parent tort actions, ends by recommending there be an absolute or a qualified privilege from suit " * * * in respect to parental discipline and control, and in respect to the conduct of the domestic establishment." 43 Harv.L.Rev. at 1079. As an example of what Professor McCurdy considered to be "conduct of the domestic establishment," he gives an example that is immediately comparable to the situation now before this court:

"The parent, driving an automobile carelessly, causes personal injury to the child, a passenger, who brings an action for damages for negligence. * * *" 43 Harv.L.Rev. at 1081.

As to this example, the recommendation is made that there be either an absolute or a "qualified privilege." Such "qualified privilege," according to Professor McCurdy, would be exceeded, and liability incurred, if the conduct of the parent was

2. This was the Canadian decision of Fidelity & Casualty Co. v. Marchand [1923] 35 Que.K.B. 5, 4 D.L.R. 913, rev'd on other grounds, [1924] Can.S.Ct. 86, 4 D.L.R. 157.

"negligent in view of the domestic relation." 43 Harv.L.Rev. at 1081. Under the McCurdy approach, a parent, driving an automobile carelessly, who injured his own child while the latter was a pedestrian, in a similar situation to any other pedestrian to whom the father would owe a duty of due care, would have no immunity. 43 Harv.L.Rev. at 1081.

Thirty years later, the McCurdy view is not drastically different. McCurdy, Torts Between Parent and Child, 5 Vill.L.Rev. 521 (1960), especially at 525, 559 and 560. To relieve the "pressure for the personal injury tort action," he suggests a special type of insurance, either compulsory or consensual, to cover the "quasi-liability" of the parent to the child. Id. at 560.

That an article by one law professor should be so often cited is probably attributable to the scholarly manner in which it attacked the oft-repeated statement that the "common law" would not countenance civil actions brought by child against parent.[3] The McCurdy article was followed by the scholarly opinion of Dunlap v. Dunlap, 84 N.H. 352, 354, 150 A. 905, 71 A.L.R. 1055 (1930), in which we find the categorical statement: "There never has been a common-law rule that a child could not sue its parent." Even this statement, however, is based principally on the absence of early English cases dealing with a suit of a child versus a parent or parent versus child. From this absence of authority, some courts have reasoned that no such action was recognized at common law. Matarese v. Matarese, 47 R.I. 131, 131 A. 198, 200, 42 A.L.R. 1360 (1925); and see Sanford, Personal Torts Within the Family, 9 Vand.L.Rev. 823, 832 (1956).

Regardless of what may have been the situation in England before this country separated itself, the overwhelming majority of court decisions rendered in this nation on the subject have held that parents are immune from the negligence claims of their unemancipated children when the tort is committed in the course of the family relationship. 39 Am.Jur., Parent and Child, § 90, at 735, and see new paragraph added in the 1967 pocket part to 39 Am.Jur., Parent and Child, at 105; 67 C.J.S. Parent and Child § 61(b) (2), at 787–789; and see Annot., 19 A.L.R.2d 423, at 439. The rule of immunity is sufficiently well established as part of the "common law" of this country that, when the Minnesota Supreme Court abrogated the doctrine in that state, it made its decision prospective only (except as to the case at hand), although the doctrine of immunity had never been "squarely decided" in that state. Balts v. Balts, 273 Minn. 419, 142 N.W.2d 66, 74 (1966).

By this time, a "vast amount of writing" has been done on this subject. Briere v. Briere, N.H., 224 A.2d 588, 589 (1966). As indicated by McCurdy, we are in an area of "* * * belief and emotion." 43 Harv. L.Rev. at 1076. One's view of the value and the essentials of amicable family life will necessarily influence his reaction to the problem at hand.

We agree with *Briere* that this most fundamental policy decision should not be made simply on a nose count of the number of cases holding one way or the other (224 A. 2d at 590). We, therefore, refer the reader to only five decisions which incline this court to rule in favor of an immunity sufficiently broad to cover the instant fact situation. Trudell v. Leatherby, 212 Cal. 678, 300 P. 7 (1931); Hastings v. Hastings, 33 N.J. 247, 163 A.2d 147 (1960); Nahas v. Noble, 77 N.M. 139, 420 P.2d 127 (1966) (a parent-versus-child case);[4] Chaffin v. Chaffin, 239 Or. 374, 397 P.2d 771 (1964);

---

3. I. e., Roller v. Roller, 37 Wash. 242, 79 P. 788, 68 L.R.A. 893 (1905), propounds the following statement:
   "At common law it is well established that a minor child cannot sue a parent for a tort." 79 P. at 789.

4. Though additional reasons recommending against a child-versus-parent suit are often mentioned, i. e., the fact that the parent is entitled to the earnings of the child and the disruption to discipline that may result from the child-versus-

and Stevens v. Murphy, 421 P.2d 668 (Wash.1966).

We are here concerned with a common activity in the typical American family. Children are often "ferried" about by their parents. It is our belief that such a function is conducive to the well-being of both the children and the parent and is intimately connected with the welfare of a family. The family unit has been weakened by various economic and social changes in our modern world. This court is reluctant to take any step which might bring additional centrifugal force to bear upon the family structure.

We are not convinced by the arguments that because brother may sue brother in tort, or child sue parent in contract,[5] it is inconsistent to prohibit child from suing parent for negligence. The prime function of a court is to make distinctions and the judiciary cannot avoid making fine distinctions at times. For the most part, no one needs a court when rights are clear. The difference between negligence and nonnegligence may hang on a hair, and yet the legal results differ as night and day. We believe we can see distinctions between these other intra-familial suits and the problem at hand, but, for those who see only inconsistency in the solutions which have generally been accorded these problems by judges, we suggest that if there be equally good reason for immunity in other situations consistency can as well be achieved by extending immunity as by abrogating it.

Though some courts have been persuaded that there is no real threat to family unity

posed by an adversary proceeding such as that at hand, *Balts,* 142 N.W.2d at 75; *Briere,* 224 A.2d at 591; and Goller v. White, 20 Wis.2d 402, 122 N.W.2d 193, 197 (1963), we find it of interest that each of these decisions is predicated upon the assumption that "generally" (*Briere,* 224 A.2d at 591), or "in most instances" (*Balts,* 142 N.W.2d at 75), or "in a great majority of such actions" (*Goller,* 122 N.W.2d at 197), losses are protected by liability insurance.[6]

In the absence of liability insurance, we believe it is better frankly to admit, as do Harper & James (advocates of an abrogation of immunity when there is liability insurance) that negligence actions " * * * might not encourage the tranquillity of the domestic hearth." 1 Harper & James, The Law of Torts § 8.11, at 649 (1956). If a person does not realize that a civil action, brought when there is no insurance coverage by a child against a parent for a mistake made in attempting to carry out ordinary family activities, is disruptive of family unity, then we can only suggest that that person knows little about family living.

Recent decisions (*Goller, Balts* and *Briere,* supra) "boldly" abandoning immunity have not limited their rulings to the situation in which liability insurance is present. In *Briere,* we find the following:

"We agree that the existence of insurance should not impose a duty upon a parent where none existed before." 224 A.2d at 590.

This is in accord with the "overwhelming majority of the decisions." Prosser, The Law of Torts § 84, at 576 (3d ed. 1964),

---

parent suit, generally parent-versus-child suits are equated with child-versus-parent suits insofar as immunity is concerned. I. e., Gaudreau v. Gaudreau, 106 N.H. 551, 215 A.2d 695, 696 (1965); Gelbman v. Gelbman, 52 Misc.2d 412, 275 N.Y.S.2d 712 (1966); Fidelity Sav. Bank v. Aulik, 252 Wis. 602, 32 N.W.2d 613 (1948); and see Prosser on Torts § 116, at 886–888 (3d ed. 1964).

5. I. e., see Goller v. White, 20 Wis.2d 402, 122 N.W.2d 193, 197 (1963);

*Balts,* supra, 142 N.W.2d 66 at 74; and *Briere,* supra, 224 A.2d at 591.

6. The court in *Goller,* at 195 demonstrated the courage of its convictions in giving effect to an exclusionary clause (excepting liability to "any member of his family residing in the household of any insured") in a liability insurance policy and at the same time holding the parent not immune from a negligence action by the child.

and *see* § 116, at 889. We refuse to indulge in the tail-chasing reasoning of Harper & James, expressed as follows:

> "The court, by allowing the recovery by the parent or child, will create a situation which will make *the insurer liable on his contract,* and whether the court will so decide is the problem. If a recovery can be permitted without disrupting the family tranquility, it ought not to be refused because an insurer will thereby be rendered *liable on his contract* when he would otherwise not be liable, and the fact that his liability is the very fact which prevents the recovery by the parent or child from disrupting the family peace is an immaterial factor in the case." (Emphasis added.) Vol. 1, § 8.11, at 649.

This argument assumes that the insurer is necessarily "liable on his contract," when a parent negligently injures a child, an assumption we are unable to make on the basis of what we know about liability insurance. The affidavit of the defendant-father filed here in behalf of his plaintiff-children indicates that he is "protected" from "any liability which he might incur by reason of an adverse judgment." This suggests a standard motor vehicle liability policy which covers "loss from the liability imposed by law" upon the insured. A.R.S. § 28–1170; and *see* Jenkins v. Mayflower, 93 Ariz. 287, 380 P.2d 145 (1963), and Sandoval v. Chenoweth, 102 Ariz. 241, 428 P.2d 98 (1967). We are unable to understand how this contract can be assumed to cover a liability which is not imposed by law on the insured.

Judgment affirmed.

HATHAWAY, C. J., and JACK G. MARKS, Superior Court Judge, concur.

NOTE: Judge HERBERT F. KRUCKER having requested that he be relieved from consideration of this matter, Judge JACK G. MARKS was called to sit in his stead and participate in the determination of this decision.