461 P.2d 186

**Sharon STREENZ, a minor, by her Guardian Ad Litem, William J. Francy, Appellant,**

v.

**James T. STREENZ and Ramona Streenz, husband and wife, Appellees.**

**No. 1 CA–CIV 863.**

Court of Appeals of Arizona.

Division 1.

Nov. 18, 1969.

Rehearing Denied Dec. 10, 1969.

Review Granted Jan. 13. 1970.

Carmichael, Johnson & Stephens, by N. Pike Johnson, Jr., Phoenix, for appellant.

Moore, Romley, Kaplan, Robbins & Green, by Robert H. Green, Phoenix, for appellees.

KRUCKER, Chief Judge.

Sharon Streenz, by her guardian ad litem, sued her parents, defendants-appellees James and Ramona Streenz, for damages sustained from an automobile accident. Defendants' motion for summary judgment was granted and plaintiff appeals.

Construing the facts in plaintiff's favor, they are as follows. Sharon, an unemancipated minor, was a passenger in a car driven by her mother. Mrs. Streenz was blinded by the sun, lost control of the car, and drove off the road into a tree. The car was a total wreck, and plaintiff suffered injury to her knees because of trauma. The main issue on appeal is whether the doctrine of parental immunity applies in this

case. Plaintiff, in particular, contends that the doctrine only applies in cases involving the exercise of parental control and discipline and that since there is none in this case, summary judgment was error.

Both parties concede that the recent case of Purcell v. Frazer, 7 Ariz.App. 5, 435 P.2d 736 (1969), decided by Division Two of this court, held the parental immunity doctrine applicable to a virtually identical fact situation. In *Purcell*, three minor children were injured when the car in which they were riding, driven by their father, was involved in a serious accident. The court, speaking through Judge Molloy, held that the doctrine of parental immunity applied in Arizona, a decision in accord with the weight of authority and based on sound reasoning.

It is also noted that Supreme Court review was denied in *Purcell*, and no significant new argument has been advanced here that was not presented in *Purcell*.

██ We believe that this division sits not as an independent division, being part of a single court, and that we should not disagree with our own decisions or those of the other division unless presented with the most cogent of reasons. Neil B. McGinnis Equipment Co. v. Henson, 2 Ariz.App. 59, 406 P.2d 409 (1965). We find no compelling reason to disagree. The trial court was therefore correct in granting the defendants' motion for summary judgment.

Judgment affirmed.

HATHAWAY, J., concurs.

Note: This cause was decided by the Judges of Division Two as authorized by A.R.S. § 12–120, subsec. E.

. HOWARD, Judge (dissenting).

With all due respect to the *stare decisis* doctrine and the majority's adherence to this court's decision in *Purcell,* supra, I am constrained to hold otherwise.

The doctrine of parental immunity, i. e., that an unemancipated minor may not sue a parent in tort, is a "court-made rule." It apparently had its genesis in 1891 in the case of Hewellette v. George, 68 Miss. 703, 9 So. 885, judicial justification for its birth being that litigation and strife between members of the family unit is contrary to public policy. The subject of parental immunity has enjoyed exhaustive treatment by law review and treatise writers, on the one hand, and opinions of the various state courts on the other. Generally speaking, the former are highly critical of the doctrine [1] while the weight of judicial authority continues to refuse a remedy to an unemancipated minor for injury inflicted by parental negligence.[2]

However, as pointed out in Schenk v. Schenk, 100 Ill.App.2d 199, 241 N.E.2d 12 (1968):

"From the time, however, of its general acceptance in this country, it has undergone a general erosion like the all-day sucker in the hands of a small child until there isn't much left but the stick itself." 241 N.E.2d, at 14.

This erosion has been accomplished by judicial recognition of exceptions and qualifications to the family immunity doctrine. For instance, actions have been permitted for personal injuries willfully or intention-

1. *See,* Prosser, Law of Torts, § 116 (3d Ed. 1964) ; W. McCurdy, Torts Between Parent and Child, 5 Villanova L.Rev. 521 (1960); Akers and Drummond, Tort Actions Between Members of the Family— Husband and Wife—Parent and Child, 26 Mo.L.Rev. 152 (1961) ; 1 Harper and James, The Law of Torts § 8.11 (1956) ; 2 Harper and James, The Law of Torts § 13.4 (1956).

2. Downs v. Poulin, Me., 216 A.2d 29 (1966); Teramano v. Teramano, 6 Ohio St.2d 117, 216 N.E.2d 375 (1966) ; Capps v. Smith, 263 N.C. 120, 139 S.E.2d 19 (1964) ; Tucker v. Tucker, Okl., 395 P.2d 67 (1964); Chaffin v. Chaffin, 239 Or. 374, 397 P.2d 771 (1964) ; Castellucci v. Castellucci, 96 R.I. 34, 188 A.2d 467 (1963) ; Maxey v. Sauls, 242 S.C. 247, 130 S.E.2d 570 (1963); Hastings v. Hastings, 33 N.J. 247, 163 A.2d 147 (1960) ; Stevens v. Murphy, 69 Wash.2d 939, 421 P.2d 668 (1966) ; *see also,* Annot. 19 A.L.R.2d 423, 439–42 (1951).

ally inflicted;[3] for injuries caused by un-intentional but willful, reckless or grossly negligent conduct;[4] when a master-servant relationship is present;[5] and where the parent was not acting in such capacity but rather in his business or vocational capacity.[6] Other authorities have held that the parental immunity doctrine does not pro-hibit an action against the estate of a de-ceased parent or on behalf of the estate of the deceased minor child.[7]

I agree with *Purcell* that acceptance or rejection of the parental immunity doctrine should not be determined by the number of authorities supporting one or the other view. However, I must part company with *Purcell* at that juncture, finding the ra-tionale of the cases which have abrogated, in part or in toto, the doctrine more con-sonant with present-day conditions and con-cepts of fairness, e. g., Hebel v. Hebel, Alaska, 435 P.2d 8 (1967); Gelbman v. Gelbman, 23 N.Y.2d 434, 297 N.Y.S.2d 529, 245 N.E.2d 192 (1969); Goller v. White, 20 Wis.2d 402, 122 N.W.2d 193 (1963); Briere v. Briere, 107 N.H. 432, 224 A.2d 588 (1966); Schenk v. Schenk, 100 Ill.App. 2d 199, 241 N.E.2d 12 (1968); Balts v. Balts, 273 Minn. 419, 142 N.W.2d 66 (1966);[8] *see also,* Nuelle v. Wells, 154 N.W.2d 364 (N.D.1967).

The appellant here does not urge a total repudiation of the immunity doctrine. Rather, it is contended that when liability insurance coverage exists, and the right of a parent to discipline his child is not

involved, abrogation of the doctrine would serve to remedy its manifest inherent in-equities. I find this argument convincing and am inclined to agree. The manifest injustice of the blanket immunity is brought home by the following example. Two sib-lings reside under the same parental roof. One is an unemancipated minor aged 17 years and the other an emancipated minor aged 16. The latter is a married daughter living at home while her husband is serv-ing an Army hitch overseas. While both are riding as passengers in a car driven by their father, an accident occasioned by the father's negligence occurs, resulting in in-juries to both children. The parental im-munity doctrine bars an action by the un-emancipated 17 year old, but not by the married daughter. I cannot conceive that courts should condone such incongru-ity when I consider the reasons advanced in defense of the doctrine, namely:

1. Preservation of the family exche-quer;

2. Prevention of fraud and collusion;

3. Preservation of domestic tranquility; and

4. Non-interference with parental au-thority.

As to "depletion of the family exche-quer", I believe the following statement in Briere v. Briere, supra, is apposite:

"As to the depletion of the family ex-chequer, the court in the *Dunlap* case summarily rejected this argument as

---

3. Brown v. Selby, 206 Tenn. 71, 332 S.W. 2d 166 (1960); Mahnke v. Moore, 197 Md. 61, 77 A.2d 923 (1951); Wright v. Wright, 85 Ga.App. 721, 70 S.E.2d 152 (1952).

4. Emery v. Emery, 45 Cal.2d 421, 289 P.2d 218 (1955); Cowgill v. Boock, 189 Or. 282, 218 P.2d 445, 19 A.L.R.2d 405 (1950); Hoffman v. Tracy, 67 Wash.2d 31, 406 P.2d 323 (1965).

5. Dunlap v. Dunlap, 84 N.H. 352, 150 A. 905, 71 A.L.R. 1055 (1930).

6. Signs v. Signs, 156 Ohio St. 566, 103 N.E.2d 743 (1952); Borst v. Borst, 41 Wash.2d 642, 251 P.2d 149 (1952); Lusk v. Lusk, 113 W.Va. 17, 166 S.E. 538

(1932); Trevarton v. Trevarton, 151 Colo. 418, 378 P.2d 640 (1963).

7. Palcsey v. Tepper, 71 N.J.Super. 294, 176 A.2d 818 (1962); Parks v. Parks, 390 Pa. 287, 135 A.2d 65 (1957); Har-lan National Bank v. Gross, Ky., 346 S.W.2d 482 (1961); Oliveria v. Oliveria, 305 Mass. 297, 25 N.E.2d 766 (1940); Davis v. Smith, 253 F.2d 286 (3d Cir. 1958); Vidmar v. Sigmund, 192 Pa. Super. 355, 162 A.2d 15 (1960).

8. *Schenk* and *Balts* both involve actions by a parent against an unemancipated minor child for injuries sustained in mo-tor vehicle accidents. *Balts* specifically limits its abrogation of immunity to torts committed by a child against the parent.

having no substantial weight and said that it ignored 'the parent's power to distribute favors as he will, and leaves out of the picture the depletion of the child's assets of health and strength through the injury.' [Citation omitted] To this may be added today's reality that if the father has means, he will almost inevitably carry insurance, and if he has not, the chances of anyone bringing suit for the child are remote. [Citation omitted] We agree that the existence of insurance should not impose a duty upon a parent where none existed before. [Citation omitted] However, as a practical matter, the prevalence of insurance cannot be ignored in determining whether a court should continue to discriminate against a class of individuals by depriving them of a right enjoyed by all other individuals. [Citations omitted]" 224 A.2d at 590.

The New York court, in Gelbman v. Gelbman, supra, aptly expresses my utter disdain for the "fraud and collusion" argument:

"The argument has been advanced that, by permitting suits between parent and child for nonwillful negligent acts, we will be encouraging fraudulent lawsuits. The argument fails to explain how the possibility of fraud would be magically removed merely by the child's attainment of legal majority. Nor does the argument pretend to present the first instance in which there is a possibility of a collusive and fraudulent suit. There are analogous situations in which we rely upon the ability of the jury to distinguish between valid and fraudulent claims. The effectiveness of the jury system will pertain in the present situation. The definite and vital interest of society in protecting people from losses resulting from accidents should remain paramount. [Citation omitted]" 245 N.E.2d at 194.

As to preservation of domestic tranquility, I agree with the court's analysis in Goller v. White, supra:

"Nevertheless, we consider the wide prevalence of liability insurance in personal injury actions a proper element to be considered in making the policy decision of whether to abrogate parental immunity in negligence actions. This is because in a great majority of such actions, where such immunity has been abolished, the existence of insurance tends to negate any possible disruption of family harmony and discipline." 122 N.W.2d at 197.

Lastly, I am unable to see any potential jeopardy of parental authority in the circumstances of this case. As stated in Briere v. Briere, supra:

"* * * family peace and parental authority, in the overwhelming majority of cases, will be threatened less by an unemancipated minor's suit for tort against a parent, where the latter is generally protected from loss by insurance, than by an action for breach of contract or to enforce property rights where the parent would ordinarily have to pay a verdict from his own pocket. [Citations omitted]" 224 A.2d at 591.

I cannot attribute sufficient weight to these court-created reasons for granting immunity to counterbalance denial to unemancipated minors as a class a right commonly enjoyed by other individuals. I do, however, wholeheartedly agree that the role of *paterfamilias* should not be usurped by the judiciary as to intra-familial activities involving parental discipline, care and control. In Goller v. White, supra, the Supreme Court of Wisconsin recognized two situations requiring preservation of parental immunity:

1. Where the alleged negligent act involves an exercise of parental authority over the child; and

2. Where the alleged negligent act involves an exercise of ordinary parental discretion with respect to the provision of food, clothing, housing, medical and dental services, and other care.

Another appellate court has referred to the Wisconsin rule as a "parental functions" immunity rule. Rodebaugh v. Grand Trunk Western Railroad Company, 4 Mich.

**14**

App. 559, 145 N.W.2d 401 (1966). A more recent Wisconsin decision, Lemmen v. Servais, 39 Wis.2d 75, 158 N.W.2d 341 (1968), aptly categorizes the *Goller* exceptions:

"The immunity granted by these two exceptions is accorded the parent, not because he is a parent, but because as a parent he pursues a course within the family constellation which society exacts of him and which is beneficial to the state. The parental non-liability is not granted as a reward, but as a means of enabling the parents to discharge the duties which society exacts. [Citation omitted]" 158 N.W.2d at 344.

*Although inclined to agree with the Wis-*consin court that certain aspects of the parental immunity doctrine should be preserved, I do not believe it necessary, under the factual circumstances presented here, to postulate ground rules for application of the doctrine. I merely advocate its repudiation in a factual situation such as is presented here, giving the unemancipated minor a right of action against a parent for personal injuries allegedly sustained as a result of the parent's negligent driving.

Notwithstanding the weight to be accorded our Supreme Court's denial of review in *Purcell*, Hobbs v. Northeast Sacramento County Sanitation Dist., 240 Cal. App.2d 552, 49 Cal.Rptr. 606 (1966), such denial does not import affirmance. N.L. R.B. v. Lannom Mfg. Co., 243 F.2d 304 (6th Cir. 1957); Application of Thompson, 157 F.Supp. 93 (E.D.Pa.1957). I therefore deem it not inappropriate to espouse re-evaluation and re-examination of the doctrine of parental immunity, hearkening to the words of the poet. William Cowper:

"The slaves of custom and established mode,

With packhorse Constancy we keep the road,

Crooked or straight, through quags and thorny dells,

True to the jingling of cur leader's bells.

So follow foolish precedents, and wink With both our eyes, is easier than to think."

For the reasons herein stated, I would reverse the trial court's order granting summary judgment to the parents.