514 P.2d 503

**SIERRA MADRE DEVELOPMENT, INC., Robert C. Murphey and Kasey Murphey, husband and wife, James H. Zeisler and Geraldine Zeisler, husband and wife, Appellants,**

**v.**

**VIA ENTRADA TOWNHOUSES ASSOCIATION, a corporation, Appellee.**

**No. 2 CA-CIV 1358.**

Court of Appeals of Arizona, Division 2.

Oct. 2, 1973.

Rehearing Denied Oct. 30, 1973.

Review Denied Dec. 4, 1973.

Waterfall, Economidis, Caldwell & Hanshaw, P. C., by Charles F. Sullivan, Tucson, for appellants.

Russo, Cox, Dickerson & Cartin, P. C., by Thomas P. Sylvester and Vernon F. Dickerson, Tucson, for appellee.

## OPINION

HATHAWAY, Chief Judge.

Defendants Sierra Madre Development, Inc. (Sierra Madre) Robert C. and Kasey Murphey (Murphey), and James H. and Geraldine Zeisler (Zeisler) have appealed from a judgment dismissing with prejudice count one in each of their respective counterclaims. Count One in each counterclaim alleged libel and all defendants stated virtually the same claim for relief.

It appears from the pleadings and briefs that plaintiff, Via Entrada Townhouses Association (Via Entrada) is an Arizona nonprofit corporation, owned and operated by the owners of townhouses in the Via Entrada Townhouse subdivision in Tucson. Also, it appears that defendant Sierra Madre is an Arizona corporation wholly owned by defendants Murphey, Zeisler and George Ogonowski (Ogonowski)[1] and that it has developed or participated in the development of the Via Entrada Townhouse subdivision.

After a portion of the townhouses were sold and occupied, a dispute arose between the homeowners association (Via Entrada) and the developer (Sierra Madre) over the adequacy of the drainage system of the subdivision. After Sierra Madre had constructed 36 of the 40 townhouses it had intended to build, Via Entrada filed a three count complaint against it and the individual defendants.

The second count alleged negligent and improper construction and design of certain common areas which resulted in improper drainage. Plaintiff asked for a judgment ordering defendants to repair or for the cost of repairs. The first count contained allegations that Sierra Madre, Murphey and Zeisler were not licensed contractors and were therefore acting illegally and criminally in participating in the construction of the Via Entrada subdivision. The prayer asked for $5,000 punitive damages and that Sierra Madre, Murphey and Zeisler be enjoined from constructing any buildings on the remaining four lots until they acquired a contracting license. The third count contained allegations that Ogonowski (President of Sierra Madre) was a licensed contractor, that he was illegally using his contractor's license to aid and abet Sierra Madre in evading state laws, and that he was knowingly conspiring with Sierra Madre, Zeisler and Murphey with the intent to evade state law. Plaintiff then asked that Ogonowski's li-

---

1. Although Count One of Ogonowski's counterclaim was also dismissed with prejudice, he has not appealed.

cense be revoked, that plaintiff be awarded attorney's fees from the bond Ogonowski had been required to post with the State of Arizona; that Ogonowski be restrained from aiding and abetting Sierra Madre in evading state law, and that plaintiff be awarded punitive damages.

The defendants' motion to dismiss all three counts of the original complaint was granted with leave to amend. Subsequently, Via Entrada filed an amended ten count complaint seeking relief on a variety of theories, including tort, breach of contract and breach of warranty. The first and fifth count of the amended complaint substantially restated the first and third counts of the original complaint set out above. Again, criminal activity and conspiracy on the part of the defendants were alleged in the same manner. The only change was that a portion of the equitable relief requested in the original two counts was not requested in the two counts as amended. The trial court dismissed with prejudice the two counts alleging criminal activity along with six of the remaining eight counts set out in the amended complaint.

The appellants then answered and counterclaimed. Each counterclaimant sought damages from Via Entrada upon two theories—libel and abuse of process. Basically, the claims for relief sounding in libel asserted that the allegations of criminal activity and conspiracy in the first and third counts of Via Entrada's complaint and the first and fifth counts of its amended complaint were libelous, false, malicious, wilful and unprivileged. The trial court later dismissed with prejudice each claim for relief based upon libel while allowing the claims sounding in abuse of process to stand. The claims for libel were dismissed apparently on the basis that the alleged libelous statements were contained in pleadings and being relevant to the judicial proceeding, were privileged. It is from this judgment that Sierra Madre, Murphey and Zeisler appeal.

■ In considering a motion to dismiss for failure to state a claim, all of the material allegations of the pleadings of the non-moving party are taken to be true. Lakin Cattle Co. v. Engelthaler, 101 Ariz. 282, 284, 419 P.2d 66 (1966). We therefore assume for purposes of appeal that the factual allegations of criminal activity in Via Entrada's complaint and amended complaint were libelous.

■ Affirmative defenses, such as privilege, may be raised and determined on a motion to dismiss where the facts constituting the defense appear, as they do here, on the face of the complaint or counterclaim. Ross v. Ross, 96 Ariz. 249, 393 P. 2d 933 (1964); Industrial Commission v. Superior Court, 5 Ariz.App. 100, 423 P.2d 375 (1967).

■ The sole question presented for review is the extent to which libelous matter alleged in pleadings is "absolutely" privileged. Absolute privilege, if applicable, protects a party who files pleadings in a judicial proceeding from all liability for defamatory statements contained therein "irrespective of his purpose in publishing the defamatory matter, of his belief in its truth or even his knowledge of its falsity." Comment (a), Restatement of Torts, § 587 (1938). See also, Massengale v. Lester, 403 S.W.2d 701 (Ky.1966); Stryker v. Barbers Super Markets, Inc., 81 N.M. 44, 462 P.2d 629 (1969); and Greenberg v. Aetna Ins. Co., 427 Pa. 511, 235 A.2d 576, 38 A.L.R.3d 262 (1967).

Divisions One of this court has held that parties to judicial proceedings in this state are generally granted an absolute privilege to use defamatory language in pleadings because of an "overriding public interest that persons should speak freely and fearlessly in litigation, 'uninfluenced by the possibility of being brought to account in an action for defamation.' [Citation omitted]" Stewart v. Fahey, 14 Ariz.App. 149, 150–151, 481 P.2d 519, 521 (1971). Recently in Todd v. Cox, 20 Ariz.App. 347, 512 P.2d 1234 (filed August 7, 1973), the same

privilege was applied to the testimony of a witness in a judicial proceeding. In *Stewart*, the Restatement of Torts, § 587 (1938) was followed.

"A party to a private litigation . . . is absolutely privileged to publish false and defamatory matter of another in communications preliminary to a proposed judicial proceeding, or in the institution of or during the course and as a part of a judicial proceeding in which he participates, *if the matter has some relation thereto*." 14 Ariz.App. at 151, 481 P.2d at 521 (Emphasis added)

Since in *Stewart*, the alleged defamatory language obviously had "some relation" to the claim stated, there was no need to discuss in detail the "relevancy" requirement italicized in the preceding quotation. The scope of this relevancy requirement requires our consideration on this appeal. Appellants argue that an alleged defamatory statement made in pleadings is only privileged if it is relevant or pertinent to some issue in the case. Appellee argues that the statement need only be relevant in the sense that it is connected with or has some relation to the subject matter of the controversy.

The question of the "relevancy" or "pertinency" of an alleged defamatory statement or whether it is related to the "subject of inquiry" has been considered in hundreds of American cases. The annotation at 38 A.L.R.3d 272 (1971) sets out a good portion of them. The language used to express the "relevancy" requirement has varied from case to case. The author of the annotation perceptively concludes:

"The courts . . . may be said not to be expressing different tests as to relevancy but rather to be using different language to ask the same thing: Is this particular defamatory matter so related to the case that as a matter of public policy it should be deemed absolutely privileged?" (38 A.L.R.3d at 288)

In delineating the point at which defamatory matter should be considered irrelevant or unrelated to the litigation and therefore unprivileged, we must weigh the private interest one has in his reputation with the public interest in effective administration of justice. The latter requires that a party to a judicial proceeding be allowed to plead any matter which might possibly strengthen or have a bearing on his claim for relief or defense without fear of a defamation suit. It likewise requires that a party be allowed to plead any set of facts which could even conceivably add up to a claim for relief or defense. The need for according a party to a judicial proceeding the widest possible latitude in his pleading has been expressed in Veeder, Absolute Immunity in Defamation, 9 Colum.L.Rev. 463, 477–78 (1909), as follows:

"The absolute immunity of parties litigant rests upon the public policy which deems it desirable that all suitors, whether malicious and bold, or conscientious and timid, should have free access to the conscience of the State with whatever complaint they choose to make. This is necessary to a thorough and searching investigation of the truth. Should the parties to a cause be placed in fear of suits for libel or slander for reflections cast upon parties or others, * * * the trial of civil causes would be far less likely to lead to correct results than where such embarassment [sic] was not felt. Perfect freedom to say in their pleadings whatever the parties choose to bring to the consideration of the court or jury tends obviously to promote the intelligent administration of justice. * * *"

Where legal precedent is relatively undeveloped, a party may find it difficult to determine whether defamatory matter he alleges will be "relevant to the issues." It may not be clear just what the issues are. Likewise, it may be difficult to determine whether a set of facts, adversely reflecting on another, will state a valid claim or defense.

■■ We are of the opinion that a defamatory statement contained in the pleadings should be absolutely privileged if it is

connected with, has any bearing on, or is related to the subject of inquiry. A party should be privileged to plead any claim or defense containing defamatory statements so long as it is not completely frivolous. If the party is made the subject of a suit for defamation, all doubts as to relevancy should be resolved in his favor. See Stryker v. Barbers Super Markets, Inc., supra, and Greenberg v. Aetna Ins. Co., supra.

Case law on the subject appears to support this position. The cases are analyzed in Prosser, Law of Torts (4th ed. 1971) p. 779, as follows:

> "Most of our courts have adopted what appears to be a standard of good faith, requiring only that the statement have some reasonable relation or reference to the subject of inquiry, or be one that 'may possibly be pertinent,' with all doubts resolved in favor of the defendant . . . ."

Also supportive of our opinion is Restatement of Torts, supra, § 587, cited with approval in Stewart v. Fahey, supra, which provides that the privilege applies if the statement has "some relation" to the judicial proceeding. Comment (c) to § 587 further explains:

> "*It is not necessary that the defamatory matter be relevant or material to any issue before the court. It is enough that it have some reference to the subject of inquiry.* Thus, while a party may not introduce into his pleadings defamatory matter which is entirely disconnected with the litigation, he is not answerable for defamatory matter volunteered or included by way of surplusage in his pleadings *if it has any bearing upon the subject matter of the litigation.*" (Emphasis added)

Although we recognize that this rule as to relevance may in some cases afford immunity to a malicious party bent on defaming his opponent, we also recognize the need, inherent in our system of justice, for parties to freely speak their mind. Lawsuits are not peace conferences but "encounters in which feelings are often wounded and reputations are sometimes soiled." Bussewitz v. Wisconsin Teachers Ass'n, 188 Wis. 121, 205 N.W. 808, 42 A. L.R. 873 (1925).

We note that this privilege is not unlimited. Defamatory statements which are clearly unconnected with the subject of inquiry or which state a totally frivolous claim or defense are not accorded the privilege. Also, nothing said herein is intended to affect the validity of any claim for relief based upon malicious prosecution or abuse of process. See Comment (a), Restatement of Torts, supra, § 587, and Stewart v. Fahey, supra, (14 Ariz.App. at 151, 481 P.2d 519 and concurring opinion of Judge Eubank therein).

■ Assuming that the only subject of inquiry in the instant case was the adequacy of the drainage system, we find that the allegedly libelous pleadings were related to this subject and are therefore privileged. Although two of the four libelous counts dealt specifically with the construction of townhouses, all four were generally concerned with appellants' alleged violations of state law requiring contractors to be licensed. Sierra Madre constructed the drainage system under its own name. The fact that Sierra Madre and two of its three stockholders had no contractor's license[2] might have some bearing upon Sierra Madre's qualifications as a contractor.[3] Its qualifications may in turn

2. A.R.S. Title 32, Chapter 10 contains a statutory scheme regulating the contracting business. A.R.S. § 32–1151 prohibits one from engaging in contracting without a license.

3. In an introductory statement to the Rules and Regulations, Registrar of Contractors (as amended April, 1973), enacted pursuant to A.R.S. Title 32, Chapter 10, Registrar James A. Vivian writes that "(t)he Registrar interprets the primary intent of the Legislature in enacting Title 32, Chapter 10 of An Act, to Regulate the Business of Contracting to be the protection of the health, safety and general welfare of all those persons dealing with persons engaged in the building contracting vocation, and the affording to such persons of an *effective and practical protection against the incompetent, inexperienced,* unlawful and fraudulent acts of building contractors with

have a bearing on the adequacy of the drainage system at the Via Entrada subdivision. Under the rule set forth above, the question is not legal relevancy, but only whether the alleged libelous statements have any relation to or bearing on the subject matter of the controversy. Resolving all doubts in favor of the defendant, Via Entrada, we hold that they do.

■ Furthermore we can affirm the dismissal on another ground. Although the libelous allegations in Via Entrada's pleadings can be looked upon as "surplusage" having some "bearing upon the subject matter of the litigation" (and privileged under Restatement of Torts, supra, § 587, Comment (c)), they can also be viewed as a legitimate attempt to state a claim for relief. Counsel for Via Entrada may have been of the opinion that Sierra Madre, Murphey, and Zeisler had acted illegally in participating in the construction of Via Entrada without contractors' licenses and in relying upon Ogonowski's license. Counsel may also have concluded that there was a possibility, however slight, that this conduct was an actionable wrong committed against the homeowners in the Via Entrada subdivision. Although in doubt as to the validity of these claims for relief, the attorney could very well have included them in the original and amended complaints in order to open all *possible* routes of relief to his client.

As to the claimed illegality of appellants' conduct, appellants assert that the holding in Desert Springs Mobile H. R. v. John H. Wood Const. Co., 15 Ariz.App. 193, 487 P. 2d 414 (1971) makes it clear that they could not possibly have been acting illegally

under these circumstances. That case, decided by Division One of this court, held that where the president, who was the "responsible managing employee" of an unlicensed corporation has a contractor's license in his individual name, the corporation (which had engaged in contracting under its corporate name) was not precluded by A.R.S. § 32–1153 [4] from recovering for breach of contract when a manifestly unjust and inequitable result would otherwise follow. Here, Via Entrada asserted in its complaint that Ogonowski was the President of Sierra Madre, had full control over the corporation, had been directing its activities, and was a duly licensed contractor.

The court in *Desert Springs* did not expressly hold that the unlicensed corporation had fully complied with the licensing statutes for all purposes—only that it had complied sufficiently to recover on its contract under § 32–1153. A forfeiture was thereby avoided. The *Desert Springs* decision should be narrowly construed in light of subsequent legislative action. In 1973, § 32–1153 was amended to read as follows:

"No contractor shall act as agent or commence or maintain any action in any court of the state for collection of compensation for the performance of any act for which a license is required by this chapter without alleging and proving that *the contracting party whose contract gives rise to the claim* was a duly licensed contractor when the contract sued upon was entered into and when the alleged cause of action arose." (Emphasis on amended portion) [5]

Although *Desert Springs* was controlling in 1971 when Via Entrada filed its original

whom they contract." (Emphasis added) Further, it is well settled that the purpose of the licensing statute is to provide protection for the public by insuring that contractors have the requisite skill and ability to perform the required work. City of Phoenix v. Superior Court, 109 Ariz. 533, 514 P.2d 454 (filed September 20, 1973).

4. A.R.S. § 32–1153 provided at the time *Desert Springs* was decided that a contractor could not bring suit to collect on a construc-

tion contract without first alleging and proving that he was a duly licensed contractor when the contract was entered into and when the cause of action arose.

5. In addition, A.R.S. § 32–1151 was amended to make it clear that it is unlawful for a person, firm, partnership, corporation, association or other organization to engage in contracting without having "his own license in his own name."

and amended complaints, its holding should be restricted to its facts. The expression of legislative intent contained in the 1973 amendment supplants the legislative intent attributed to the statute by *Desert Springs*. The subsequent amendment would seem to clarify the statute permitting its being read as it existed before the amendment in light of the amendment. General Petroleum Corp. of California v. Smith, 62 Ariz. 239, 157 P.2d 356, 158 A.L.R. 364 (1945); Neil B. McGinnis Equipment Co. v. Henson, 2 Ariz.App. 59, 406 P.2d 409 (1965).

Even before the statutory amendments, A.R.S. § 32–1164, subsec. 1 provided that a contractor was guilty of a misdemeanor when:

"(a)iding or abetting an unlicensed person to evade the provisions of this chapter or knowingly combining or conspiring with an unlicensed person, or allowing . . . (his) license to be used by an unlicensed person or acting as agent, partner, associate or otherwise, of an unlicensed person with intent to evade the provisions of this chapter."

Also, A.R.S. § 32–1164, subsec. 2 made it a misdemeanor to act "in the capacity of a contractor within the meaning of this chapter without a license."

Further, A.R.S. § 32–1121 listed persons not required to be licensed as contractors. Corporations with individually licensed presidents and responsible managing employees were not exempted. Rule 8, Rules and Regulations, Registrar of Contractors, supra, also provided in part that a license "is neither assignable nor transferrable and can be legally used only by the person to whom it is issued . . . ."

We therefore reject appellants' contention that the *Desert Springs* decision clearly held their activities to be legal and

thereby rendered Via Entrada's claims for relief totally without any chance of success. We intimate no opinion as to whether the appellants were acting legally since the only question before us is whether it would be totally frivolous for Via Entrada to conclude, and therefore plead, that appellants' conduct was illegal.

Appellants next argue that disregarding the legality of their activity, Via Entrada's pleaded statements were unwarranted and had no chance of success since it had no standing to assert the libelous claims for relief. A.R.S. § 32–1103 vests the Registrar of Contractors with "all functions and duties" relating to the administration of the chapter regulating contractors. However, the section neither expressly grants exclusive power to the Registrar nor expressly precludes an action by a private citizen seeking equitable relief, or even damages, based upon asserted violations of the regulatory legislation. We again express no opinion concerning Via Entrada's standing to bring the suit although we do find appellants' legal argument to be strong. However, we find no statutory provision or Arizona case expressly prohibiting an action by a private citizen who asserts that he has been wronged by the defendant's failure to comply with the licensing statutes.[6] Resolving all doubts in favor of the defendant, this court cannot hold that any chance of success in stating a claim for relief was non-existent. To do so would discourage parties in the future from alleging claims and defenses, which might defame their opponents, merely because the claim or defense had never gained prior, express judicial or legislative approval.

We therefore hold that Via Entrada's original and amended complaints can be

---

6. While it is not clear that a private citizen has a cause of action against an unlicensed contractor with whom he has dealt, it is clear that he may, as a practical matter, be harmed.

An unlicensed contractor may not have been examined for competency under A.R.S. § 32–1122. He also may not have satisfied the other requirements as to reputation, etc. listed in § 32–1122. Neither would an unlicensed contractor have posted a bond required by A.R.S. § 32–1152 which is held by the Registrar for the protection of persons who contract with the contractor, i. e., the residents of Via Entrada whom Via Entrada claimed to represent. (See A.R.S. § 32–1152, subsec. D.)

taken as legitimate attempts to state claims for relief which had, at least, some possibility of success. They were not totally frivolous. Hence, they are privileged and cannot be made the basis of a defamation suit.

Affirmed.

HOWARD and KRUCKER, JJ., concur.