NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

JEFFREY MASON, et al., *Plaintiffs/Appellants*,

*v.*

CITY OF SCOTTSDALE, *Defendant/Appellee*.

No. 1 CA-CV 24-0303

FILED 01-23-2025

---

Appeal from the Superior Court in Maricopa County
No. CV2018-009579
The Honorable Bradley H. Astrowsky, Judge

**AFFIRMED**

---

COUNSEL

Tiffany & Bosco, PA, Phoenix
By William M. Fischbach III, Amy D. Sells
*Counsel for Plaintiffs/Appellants*

Wieneke Law Group, PLC, Tempe
By Kathleen L. Wieneke, Laura Van Buren, Tara B. Zoellner
*Counsel for Defendant/Appellee*

---

**MEMORANDUM DECISION**

---

Judge Jennifer B. Campbell delivered the decision of the Court, in which Presiding Judge Brian Y. Furuya and Judge Maria Elena Cruz joined.

---

**C A M P B E L L**, Judge:

¶1        In this appeal we are asked to decide whether an absolute privilege precludes a city's liability for a gross negligence claim based on crime-victim-designated peace officers' statements in their own official reports. We begrudgingly hold that an absolute privilege does apply to the statements made by the peace officers in this case. Accordingly, we affirm the superior court's entry of summary judgment for the City of Scottsdale (City) on Jeffrey Mason's gross negligence claim.

## BACKGROUND

¶2        In arrest reports, City officers wrote that when they came to Mason's home to investigate a fight with a neighbor, Mason pointed a gun either at them or in their direction. Based on those statements, the State charged Mason with aggravated assault upon the officers. Mason ultimately pled guilty to disorderly conduct with a deadly weapon.

¶3        Mason sued the City for, inter alia, defamation and gross negligence based on the officers' statements describing his display of the gun. Mason alleged that the officers' body camera footage showed, contrary to their statements, that the gun was always pointed towards the ground. The City moved for summary judgment on both claims, arguing that the statements were absolutely privileged as made by victims in a judicial proceeding. The superior court denied summary judgment and the City's subsequent motion for reconsideration. The City then sought relief from this Court by special action, noting that summary judgment was denied on both of Mason's claims, but directing its arguments to the defamation claim. Addressing the defamation claim only, this court held in *City of Scottsdale v. Mikitish*, 253 Ariz. 238 (App. 2022), that the City was entitled to summary judgment because the officers' status as putative crime victims gave them an absolute privilege regarding their statements in their reports— regardless of the statements' veracity.

¶4            On remand, the City sought reconsideration of the denial of summary judgment on the gross negligence claim, arguing that *Mikitish*'s determination of an absolute privilege meant the City prevailed on both claims. The superior court denied the City's motion. The next year, after a new judge was assigned to the case, the City filed a second motion for reconsideration advancing the same argument. The court granted that motion and dismissed the entire case. Mason appealed.

## DISCUSSION

¶5            The parties dispute whether liability for statements giving rise to a claim of gross negligence are precluded by an absolute privilege afforded to officer-victims. To start, we note that this issue was not decided, either expressly or impliedly, by *Mikitish* because there the arguments and disposition were limited to Mason's defamation claim. *See Mikitish*, 253 Ariz. at 239, 242, ¶¶ 1, 20. Though we may look to *Mikitish* for guidance, that decision neither addressed nor decided the gross negligence claim. *See Copper Hills Enters., Ltd. v. Ariz. Dep't of Revenue*, 214 Ariz. 386, 391, ¶ 15 (App. 2007) (recognizing that law of the case doctrine only precludes trial court from reaching issues that appellate court decided expressly or by necessary implication). We review the grant of summary judgment on privilege grounds de novo. *Ledvina v. Cerasani*, 213 Ariz. 569, 570, ¶ 3 (App. 2006).

## I.       Victim's Bill of Rights

¶6            We start with the Victim's Bill of Rights (the Bill), which was added to the Arizona Constitution through an initiative in 1990. *State v. Roscoe*, 185 Ariz. 68, 70 (1996). As our supreme court explained in *Roscoe*:

> In the election of 1990, the people of Arizona voted to constitutionalize a much broader Victims' Bill of Rights (the Bill) and granted statutory implementation powers to the legislature. Ariz. Const. art. II, § 2.1. The Bill provides victims of crimes with several constitutional rights, including the right "[t]o refuse an interview, deposition, or other discovery request by the defendant, the defendant's attorney, or other person acting on behalf of the defendant." Ariz. Const. art. II, § 2.1(A)(5). The Bill defines a victim as "a person against whom the criminal offense has been committed ... except if the person is in custody for an offense or is the accused." Ariz. Const. art. II, § 2.1(C). The Bill expressly grants to the legislature "the authority to enact substantive and procedural

laws to define, implement, preserve and protect the rights guaranteed to victims by this section." Ariz. Const. art. II, § 2.1(D).

*Id.*

¶7　　　From the Bill's inception, there was a tension between the need to hold officers accountable to the public in their role as crime investigators and the need to protect officers as crime victims. The legislature attempted to address this juxtaposition by adopting a statute adding a provision to the Bill allowing officer-victims to maintain their victim status but requiring them to submit to pretrial interviews. *See id.* (describing A.R.S. § 13-4433(F) and later-adopted, corresponding procedural rule). The legislature thereby recognized that officer-victims wear two hats, one of which is that of a public servant charged with investigating crimes with honesty and transparency, and that officer-victims' rights should reflect this reality. *See State ex rel. Romley v. Hutt*, 195 Ariz. 256, 261, ¶ 9 (App. 1999) (explaining that a victim's right to refuse a pretrial interview protects the victim's privacy and shields him or her from unwanted contact with the victimizer). This addition to the Bill allowed defense counsel pretrial access to officer-victims as investigators while maintaining all other rights conveyed to victims under the Bill.

¶8　　　*Roscoe*, however, concluded that because the Bill's exceptions to its definition of a "victim" do not mention officer-victims, they are entitled to exactly the same protections under the Bill as any other crime victims. 185 Ariz. at 71–74. *Roscoe* therefore held the legislature's attempt to harmonize officer-victims' conflicting roles unconstitutional. *See id.* at 74. It is against this backdrop that we must now consider whether officer-victims' statements in their reports, true or not, are protected by the absolute privilege of immunity from suit afforded to victims.

## II.　　Absolute Privilege for Crime Victims

¶9　　　An absolute privilege is unconditional—"the speaker's motive, purpose or reasonableness in uttering a false statement do not affect the defense." *Goldman v. Sahl*, 248 Ariz. 512, 520, ¶ 17 (App. 2020) (citation omitted). Parties to judicial proceedings generally hold an absolute privilege to make statements related to the litigation because there is an overriding interest in promoting fearless and complete exposure of the information relevant to an informed disposition. *Green Acres Tr. v. London*, 141 Ariz. 609, 613 (1984); *Sierra Madre Dev., Inc. v. Via Entrada Townhouses Ass'n*, 20 Ariz. App. 550, 552–53 (1973).

¶10 This absolute privilege applies to crime victims' statements to police. *Ledvina*, 213 Ariz. at 572–73, ¶¶ 7, 14. In *Ledvina*, a case involving a civilian victim, we explained that such statements are the first step in a judicial proceeding and that not applying the privilege would contravene crime detection, crime prosecution, and the protections afforded to victims under the Bill. *Id.* at 570, 573–74, ¶¶ 2, 11–12, 14. Then, in *Mikitish*, we held, consistent with *Roscoe*, that the privilege also applies to bar liability for defamation when the putative victim is a peace officer. 253 Ariz. at 241, ¶¶ 12–13.

¶11 We are unpersuaded by Mason's argument that the absolute privilege protects officer-victims *only* from defamation claims. To be sure, the privilege is not limitless—it does not apply to statements clearly unrelated to the litigation, and it does not protect against criminal charges or claims for improper litigation conduct (i.e., abuse of process, malicious prosecution, or the wrongful institution of civil proceedings). *Green Acres Tr.*, 141 Ariz. at 613–14; *Goldman*, 248 Ariz. at 528, ¶ 53; *Sierra Madre Dev.*, 20 Ariz. App. at 554; *Ledvina*, 213 Ariz. at 575, ¶ 15. But in general, the privilege protects against all tort claims—even intentional ones—based on the publication of defamatory statements. *See Yeung v. Maric*, 224 Ariz. 499, 502, ¶ 14 (App. 2010) (noting that privilege applies to claims of false light invasion of privacy); *Linder v. Brown & Herrick*, 189 Ariz. 398, 402, 406 (App. 1997) (applying privilege to preclude claim of fraud arising from allegedly defamatory statements made by opposing counsel to court); *Drummond v. Stahl*, 127 Ariz. 122, 125–26 (App. 1980) (applying privilege to preclude claim of tortious interference with contract arising from allegedly defamatory statements in complaint to state bar); *Lewis v. Swenson*, 126 Ariz. 561, 562, 565, 567 (App. 1980) (applying privilege to preclude claim of negligence arising from opposing counsel's failure to instruct a witness to limit a testimonial response); *see also* Defense Against a Prima Facie Case § 14:33 (March 2024) ("The absolute litigation privilege bars derivative tort actions and applies to all torts other than malicious prosecution, including fraud, negligence, and negligent misrepresentation.").

¶12 This is a logical result. When a claim is based on a defamatory statement, how it is styled does not change its fundamental nature, and the same reasons for applying the absolute litigation privilege exist. *See Ryan v. Napier*, 245 Ariz. 54, 61, ¶ 23 (2018) (holding that plaintiffs could not "'plead around' statutory provisions that apply only to intentional tort claims" by describing as negligent an officer's decision to intentionally inflict force); *Drummond*, 127 Ariz. at 125 (holding that though prior caselaw did not "directly involve a case of tortious interference with a contractual relationship, the reasoning and legal principles set out have application to

and control the disposition of this case"). Mason's gross negligence claim rests exclusively on the officers' alleged false reporting. Since officer-victims are entitled to the same protections as other crime victims, we hold that the absolute privilege bars gross negligence liability where, as here, that claim hinges on the officer-victims' statements in their official written reports.

¶13 We must so hold despite the reality that officer-victims make those reports while fulfilling their investigative duties—and despite the general rule that officers are liable for gross negligence when undertaking discretionary acts, a rule that serves as a necessary check on bad-faith conduct. *See Spooner v. City of Phoenix*, 246 Ariz. 119, 123–24, ¶¶ 9–10 (App. 2018).

### III. Other Liabilities

¶14 We note with concern that affording greater protection to officer-victims may incentivize officers to describe themselves as victims to avoid liability for making exaggerated claims—or completely false statements—in their reports. We emphasize, however, that strategically crafted reports will remain subject to the privilege's limits. Frivolous or wholly irrelevant statements will not be afforded protection. *Sierra Madre Dev.*, 20 Ariz. App. at 554. Further, the privilege will not bar civil claims for abusive litigation or criminal charges for false reporting. *Id.*; *Ledvina*, 213 Ariz. at 575, ¶ 15.

### CONCLUSION

¶15 Constrained by binding precedent, we affirm the entry of summary judgment for the City on Mason's gross negligence claim.

