646 P.2d 878

Alexander **FERNANDEZ**, Personal Representative of the Estate of Joseph N. Ashford, II, Deceased, for and on behalf of Elizabeth A. Welsh aka Elizabeth A. Ashford and Joseph N. Ashford, III, Plaintiffs-Appellants,

v.

Steven Gordon **ROMO**, Personal Representative of the Estate of Joseph N. Ashford, Deceased, Defendant-Appellee.

No. 15654.

Supreme Court of Arizona, In Banc.

May 12, 1982.

Rehearing Denied June 22, 1982.

William B. Revis, Ltd. by David L. Sandweiss, William B. Revis, Phoenix, for plaintiffs-appellants.

Lewis & Roca by D. W. Grainger, Paul G. Ulrich, Suzanne P. Clarke, Phoenix, for defendant-appellee.

Keane & Foreman by John Foreman, Phoenix, brief amicus curiae Arizona Trial Lawyers Ass'n.

CAMERON, Justice.

This is an appeal by the plaintiff Alexander Fernandez for and on behalf of Elizabeth A. Ashford and Joseph N. Ashford III, from the granting of a motion for summary judgment in favor of Steven Gordon Romo, personal representative of the estate of Joseph N. Ashford II, deceased. We have jurisdiction pursuant to Rule 19(e), Arizona Rules of Civil Appellate Procedure, 17A A.R.S.

We need answer but one question on appeal and that is whether the doctrine of interspousal tort immunity in automobile accident cases should be abolished.

The facts necessary to a determination of this matter are as follows. In July of 1974, Joseph N. Ashford II was returning to his home in Parker, Arizona, from Peach Springs, Arizona. Mr. Ashford was accompanied by his wife and two of his three children, Michael age 9 and Joseph III age 12. On reaching Lake Havasu City, Arizona, they encountered severe rainstorms. Mr. Ashford drove the vehicle down Acoma Boulevard, the main road through Lake Havasu City, to a point where it intersects with Jamaica Drain, a wash, where water was running across the roadway. Despite the protests of Mrs. Ashford, Mr. Ashford proceeded into the wash where the automobile was swept down Jamaica Drain and turned over. Joseph Ashford III managed to escape through the rear window of the vehicle. Mr. and Mrs. Ashford and Michael Ashford were drowned.

Although three separate wrongful death actions were brought, we are concerned only with the action brought for the benefit of the surviving children, Joseph N. Ashford III and Elizabeth Ashford, against the estate of their deceased father for the death of their mother.

Arizona's wrongful death statute reads as follows:

"When death of a person is caused by wrongful act, neglect or default, and the act, neglect or default is such as would, if death had not ensued, have entitled the party injured to maintain an action to recover damages in respect thereof, then, and in every such case, the person who or the corporation which would have been liable if death had not ensued shall be liable to an action for damages, notwithstanding the death of the person injured * * *." A.R.S. § 12–611.

The defendant Romo, as representative of the estate of Joseph N. Ashford II, filed a motion for summary judgment based upon the doctrine of interspousal tort immunity. Defendant contended that A.R.S. § 12–611 permits actions for wrongful death only if the injured party could have maintained an action for tort if the injured party had lived. Defendant reasoned that since Arizona does not permit interspousal tort suits for negligent infliction of injury, the wife could not have brought suit against her husband had she lived, and therefore an action for her wrongful death could not be maintained. Under then existing law, the trial court was correct in granting the defendant's motion for summary judgment, since the law at the time did not permit interspousal tort suits for negligent injury. From the granting of the motion for summary judgment, plaintiffs appeal.

■ The doctrine of interspousal tort immunity is of common law origin, court-made and court preserved. *Freehe v. Freehe*, 81 Wash.2d 183, 500 P.2d 771 (1972). Simply stated, at common law a spouse could not maintain a tort action against the other spouse. When Arizona became a state, it adopted the common law of England as the "rule of decision" in our courts:

"The common law only so far as it is consistent with and adapted to the natural and physical conditions of this state

and the necessities of the people thereof, and not repugnant to or inconsistent with the constitution of the United States or the constitution or laws of this state, or established customs of the people of this state, is adopted and shall be the rule of decision in all courts of this state." A.R.S. § 1–201.

This statute does not mean that the common law adopted at the time of statehood never changes. Just as the common law is court-made law based upon the circumstances and conditions of the time, so can the common law be changed by the court when conditions and circumstances change. When the reason for a rule no longer exists, the rule itself may be changed by the court.

This principle was recognized early in our state's history in a case where the wife was being sued for assault upon her husband's suspected paramour. She sought to join her husband as a defendant. This court, while admitting that at common law the husband was liable for the torts of the wife committed during coverture, stated:

> "It is argued that a cardinal rule of the common law is that when the reasons for the rule have ceased, the rule itself ceases, and without doubt such is the common law. That is only another way to express the elasticity of that great system of laws. That rule presupposes that another rule was in force and was the common law at one time, but those conditions have changed by legislation, by established custom, or from other causes, so that the reasons for the establishment of the given rule are no longer in existence, and as a consequence such rule no longer exists." *Hageman v. Vanderdoes*, 15 Ariz. 312, 320–21, 138 P. 1053, 1056 (1914).

The doctrine of interspousal tort immunity was recognized in Arizona in the case of *Schwartz v. Schwartz*, 103 Ariz. 562, 447 P.2d 254 (1968). In that case, Isabel Schwartz and her husband Morris Schwartz, who had been married for many years and had resided in New York continuously since the inception of their marriage, were visiting Arizona for a brief vacation. While the husband was driving a rented automobile, they were involved in an automobile accident. The wife, who was injured in the accident, brought suit against her husband in the state courts of Arizona. We held in *Schwartz*, supra, that the doctrine of interspousal tort immunity applied in Arizona, but that Isabel Schwartz could maintain the action because the State of New York, their residence, allowed the suit. We thus arrived at the anomalous law in Arizona that while tourists from states which had abolished interspousal tort immunity could maintain an action in Arizona courts against their spouses for negligence, Arizona citizens, in the same situation, were denied the use of their own courts for that purpose.

There are four reasons generally given for retaining the doctrine of interspousal tort immunity. First, the ancient view of the legal unity of the husband and wife. Second, the public policy of preserving the harmony of the family. Third, preventing fraud and collusion, and fourth, in Arizona, the community property laws. See *Burns v. Burns*, 111 Ariz. 178, 526 P.2d 717 (1974); Prosser, Torts § 122 (4th ed. 1971). An examination of each of these four reasons leads us to believe that the rule need no longer be retained in this jurisdiction.

## UNITY

Historically, at common law, the unity of the husband and wife was the basis for the doctrine of interspousal tort immunity. Since the husband and wife were one, it logically followed that part of the one could not sue the other part. As was noted by the Washington Supreme Court:

> "The 'supposed unity' of husband and wife, which serves as the traditional basis of interspousal disability, is not a reference to the common nature or loving oneness achieved in a marriage of two free individuals. Rather, this traditional premise had reference to a situation, coming on from antiquity, in which a woman's marriage for most purposes rendered her a chattel of her husband." *Freehe v. Freehe*, supra, 81 Wash.2d at 186, 500 P.2d at 773.

We do not believe that the "unity" principle can still be regarded as a valid reason for retaining the doctrine of interspousal tort immunity. Conditions, legislative enactments, and court-made law are different now than they were under English common law. Legislation in the form of married women's acts, A.R.S. § 25–214, have been passed giving married women the "same legal rights" and the "same legal liabilities" as men. While enacting such statutes, legislatures have responded to the wishes of the citizens that women be accorded the same legal privileges and responsibilities as men. As the Illinois court stated in relieving the husband from the common law liability for the torts of the wife:

> " * * * So long as the husband was entitled to the property of the wife and to her industry, so long as he had power to direct and control her, and thus prevent her from the commission of torts, there was some reason for his liability. The reason has ceased. The ancient landmarks are gone. The maxims and authorities and adjudications of the past have faded away. The foundations hitherto deemed so essential for the preservation of the nuptial contract, and the maintenance of the marriage relation are crumbling. The unity of husband and wife has been severed. They are now distinct persons, and may have separate legal estates, contracts, debts, and injuries. * * * His legal supremacy is gone, and the sceptre has departed from him. * * * Her brain and hands and tongue are her own." *Martin v. Robson*, 65 Ill. 129, 137, 139, 16 Am.Rep. 578, 585, 586, 587 (1872).

The doctrine of interspousal tort immunity cannot be supported by an antiquated and narrow "unity" doctrine that perpetuates the fiction of female disability if not inferiority. Whatever logic the unity doctrine had in times gone by, it cannot operate today as a reason for supporting the doctrine of interspousal tort immunity. As Justice Traynor stated:

> "The fictional unity of husband and wife has been substantially vitiated by the overwhelming evidence that one plus one adds up to two even in twogetherness. Thus, one spouse may recover against another in tort. (citations omitted) The reasoning is that if he tortiously injures her, or vice versa, he or she does so independently of her or him. The tortfeasor, though perhaps not quite himself or herself at the time of the tort, is clearly not one with the injured spouse. Indeed, the latter emerges more separate than ever, now that injury has been added to the usual marks of identity." *People v. Pierce*, 61 Cal.2d 879, 880, 40 Cal.Rptr. 845, 846, 395 P.2d 893, 894 (1964).

## DOMESTIC TRANQUILITY

Another reason given for upholding the doctrine of interspousal tort immunity has been the preservation of family harmony. Testifying against one's spouse in a tort action, it is contended, is of great damage to the marriage relationship. We doubt, however, that family harmony will be damaged any more by allowing a suit for the negligent infliction of injury upon a spouse than the damage that will be done if the injury goes unredressed. As the New Jersey court stated:

> "[W]e are doubtful that the marital relationship will be any more disturbed by allowing the cause of action than by denying it. Where one's conduct is such that his spouse elects to sue him, if there is no insurance, the damage probably has been already done. A person would not sue his spouse if there were perfect harmony, and it is unlikely that adjudication of the rights involved will worsen the relationship." *Immer v. Risko*, 56 N.J. 482, 488, 267 A.2d 481, 484 (1970).

And, of course, the threat to marital harmony is even less when we consider the existence of liability insurance. We have found that allowing children to sue their parents for negligence in automobile accident cases does not threaten the harmony of the family. For example, where a minor, unemancipated child was allowed to maintain an action against her parent for injuries received in an automobile accident in which the mother was the driver, we stated:

"We feel that two principal factors undermine * * * [the] 'domestic tranquility' rationale expressed in *Purcell v. Frazer*, [7 Ariz.App. 5, 435 P.2d 736] supra, and compel an overruling of that case. One factor, as expressed above, is that the common law has long permitted child to sue parent in property or contract. It is not unsafe to say that some of the most bitter family disputes arise over property, and yet parental immunity does not limit causes of action in this area. * * * Secondly, we cannot ignore the almost universal existence of liability insurance, particularly in the automobile accident realm. Where such insurance exists, the domestic tranquility argument is hollow, for in reality the sought after litigation is not between child and parent but between child and parent's insurance carrier. * * * " *Streenz v. Streenz*, 106 Ariz. 86, 88, 471 P.2d 282, 284 (1970).

We do not believe, considering the existence of automobile accident insurance, that the family harmony or domestic tranquility will be harmed by allowing suit for injuries.

### FRAUD AND COLLUSION

A third objection to the abolishment of interspousal tort immunity, and one we admittedly feel has been the most persuasive, is the opportunity for fraud and collusion between the parties. This is especially so in cases where there is insurance coverage. The idea of a husband and wife rising from the marriage bed, eating breakfast, and driving in the same automobile to court where, aided by their respective attorneys, they will testify against each other, does little to enhance the perception of justice and leads to a suspicion of collusion and fraud. We think the courts can control this, however, and the attorneys for the insurance company will, we are sure, be quick to detect and bring to the court's attention any evidence of collusive conduct by the parties. We agree with the Nevada Supreme Court:

"An interspousal tort claim should not be saddled with the presumption of fraud *ab initio* (citation omitted). Our adversary system will ferret out the nonmeritorious claims and dispatch those who would practice fraud upon the courts." *Rupert v. Stienne*, 90 Nev. 397, 401, 528 P.2d 1013, 1015 (1974).

While the courts should be alert to note fraud and collusion when it exists, the fact that there is an opportunity for fraud or collusion should not be a reason for denying admission to the courts in cases of interspousal tort liability. *Borst v. Borst*, 41 Wash.2d 642, 251 P.2d 149 (1952).

### COMMUNITY PROPERTY

A fourth factor in a community property state like Arizona concerns the position of the parties to such property. As we noted:

"We pause briefly to point out the fact that in a community property state such as ours a complete abrogation of interspousal tort immunity is fraught with many problems. One which comes to mind immediately is our Arizona Rule that damages for personal injuries to a spouse are community property." *Windauer v. O'Connor*, 107 Ariz. 267, 268, 485 P.2d 1157, 1158 (1971).

This rule was changed somewhat, however, in *Jurek v. Jurek*, 124 Ariz. 596, 606 P.2d 812 (1980), which held that while special damages represented by lost wages and medical expenses are injuries to the community, the injuries themselves are personal to the spouse.

" * * * The body which he brought to the marriage is certainly his separate property. The compensation for injuries to his personal well-being should belong to him as his separate property." *Jurek v. Jurek*, supra, 124 Ariz. at 598, 606 P.2d at 814.

If interspousal disability is removed there will be some problems in adjusting to the new rule. We do not perceive that these will be formidable, and, in any event, are not a justification for clinging to a rule of law that has long since outlived its vigor. We do not then believe that our community property status prevents the abolishing of interspousal tort immunity any more than it has in other community property states.

*Maestas v. Overton,* 87 N.M. 213, 531 P.2d 947 (1975); *Freehe v. Freehe,* supra; *Klein v. Klein,* 58 Cal.2d 692, 26 Cal.Rptr. 102, 376 P.2d 70 (1962); *Rupert v. Stienne,* supra.

At the time of *Schwartz v. Schwartz* (1968), supra, 17 states had abolished the doctrine of interspousal tort immunity. At the time of the oral argument in this case, some 33 states had abrogated or limited the principle. We believe that the time has come to abrogate the doctrine of interspousal tort immunity in Arizona. The reasons for the doctrine, based in rejected principles of the common law which treated married women as chattels and domestic servants, no longer support the rule and the rule itself must go. We agree with the New Jersey court which stated:

> "[T]here is something wanting in a system of justice which permits strangers, friends, relatives, and emancipated children to recover for injuries suffered as a result of their driver's negligence but denies this right to the driver's spouse and minor children who are also passengers in the same vehicle." *Immer v. Risko,* supra, 56 N.J. at 495, 267 A.2d at 488.

The trial judge was correct, under the then existing law, in granting the motion for summary judgment. We have decided that the time has come to change that law, however, and direct that the motion for summary judgment be set aside and the matter remanded for further proceedings consistent with this opinion.

GORDON, V. C. J., and HAYS and FELDMAN, JJ., concur.

HOLOHAN, Chief Justice, dissenting:

I dissent.