OPINION
OGG, Judge.
This is an appeal by the plaintiff, Mary Ellen Gibson, for and on behalf of Brent Woodruff and as personal representative of the estate of Dianna Woodruff, deceased. At the trial court below, two separate claims were litigated, resulting in jury verdicts in favor of defendant-appellee, Inez Boyle, personal representative of the estate of Kelly Allen Boyle, deceased, on both claims.
*515 For the reasons set forth below, we affirm the trial court’s judgment.
We begin by reviewing the facts giving rise to this matter. On the evening of October 13, 1974, John Woodruff, his wife Dianna, and their four-year-old son Brent were returning home from a visit with John Woodruff’s cousin. John Woodruff was driving; his wife and child were passengers in the front seat of the Woodruff vehicle. As the Woodruff vehicle approached the intersection of Alma. School Road and McClellan Road in Mesa, Arizona, John entered the left turn bay in anticipation of making a left turn onto McClellan. According to his testimony, John slowed down almost to a stop but proceeded to make his turn after deciding that the vehicles approaching in the northbound lanes of Alma School Road were a safe distance away. John began his turn and at some point in the turn, noticed that one of the north-' bound vehicles was almost upon his vehicle. John apparently attempted to accelerate through the turn but unfortunately was unable to avoid a tragic collision.
The vehicle which struck the Woodruff’s was a recently purchased CJ-5 four-wheel drive Jeep convertible driven by decedent, Kelly Boyle. The Boyle vehicle was occupied by decedent and three passengers. Apparently Kelly Boyle was taking the passengers for a ride in his new vehicle. Kelly, as well as his passengers, had been guests at a “family gathering” at the home of Jack and Jeannine Cerney.
As a result of the collision, both Dianna Woodruff and Kelly Boyle were killed almost instantly. Both John and Brent Woodruff suffered extensive injuries. The passengers in the jeep were all injured to one degree or another.
Several lawsuits resulted, two of which were consolidated for trial and are now before this court. The first claim is that of Brent Woodruff, brought by his guardian ad litem, for injuries he suffered as a result of the accident, against appellee as personal representative of the estate of Kelly Boyle. The second claim is a wrongful death claim brought on behalf of the estate of Dianna Woodruff against appellee for the benefit of her husband, John Woodruff, and her son, Brent Woodruff.
The first issue raised on appeal is whether the trial court erred in submitting to the jury an imputed spousal negligence instruction pertaining to the wrongful death claim brought by the personal representative of Dianna Woodruff’s estate. In light of our supreme court’s recent decision in Fernandez v. Romo, 132 Ariz. 447, 646 P.2d 878 (1982), we find that the trial court did err.
A right of action for wrongful death is purely statutory. Bowslaugh v. Bowslaugh, 126 Ariz. 517, 617 P.2d 25 (1979); Lueck v. Superior Court, County of Cochise, 10 Ariz. 583, 469 P.2d 68 (1970). The Arizona wrongful death statute, A.R.S. § 12-611, reads as follows:
When death of a person is caused by wrongful act, neglect or default, and the act, neglect or default is such as would, if death had not ensued, have entitled the party injured to maintain an action to recover damages in respect thereof, then, and in every such case, the person who or the corporation which would have been liable if death had not ensued shall be liable to an action for damages, notwithstanding the death of the person injured ...
Arizona courts have consistently held that our wrongful death statute permits an action for wrongful death only if the decedent could have maintained an action had that person lived. See e.g., Fernandez v. Romo, supra; Delozier v. Smith, 22 Ariz.App. 136, 524 P.2d 970 (1974). Hence, the statutory representative of a decedent’s estate in a wrongful death action is subject to such defenses as could have been presented against the decedent had she lived and brought an action for her injuries. Womack v. Preach, 64 Ariz. 61, 165 P.2d 657 (1946). This would, of course, include the defense of contributory negligence. See Delozier v. Smith, supra.
Prior to Fernandez, negligence on the part of a decedent or the spouse of a dece *516 dent barred recovery by all statutory beneficiaries. Delozier v. Smith, supra. In light of the supreme court’s abolition of interspousal tort immunity in automobile accident cases, we must decide whether the doctrine of imputed spousal negligence is likewise abolished. See Fernandez v. Romo, supra.
In Fernandez, a wrongful death action was brought for the benefit of the two surviving children of Mr. and Mrs. Joseph N. Ashford, II, against the estate of their deceased father for the death of their mother. Both parents were drowned when Mr. Ashford attempted to drive through a wash, resulting in their vehicle being swept away by running water. The personal representative of the estate of Mr. Ashford was granted summary judgment based upon the doctrine of interspousal tort immunity, which barred one spouse from bringing suit against the other. Since Mrs. Ashford, had she lived, could not have maintained an action against her husband’s estate, her representative was likewise barred from bringing a wrongful death action for the benefit of her surviving children. The supreme court set aside the motion for summary judgment after concluding that the doctrine of interspousal tort immunity should no longer be retained in Arizona. Before doing so, the court examined the four reasons generally given for retaining the doctrine of interspousal tort immunity. The first reason considered was the ancient view of the legal unity of husband and wife. The court concluded:
The doctrine of interspousal immunity cannot be supported by an antiquated and narrow “unity” doctrine that perpetuates the fiction of female disability if not inferiority. Whatever logic the unity doctrine had in times gone by, it cannot operate as a reason for supporting the doctrine of interspousal tort immunity.
132 Ariz. at 450, 646 P.2d at 881.
The second reason discussed was the preservation of family harmony and domestic tranquillity. The court concluded that, considering the existence of automobile accident insurance, neither would likely be harmed by allowing interspousal lawsuits for injuries sustained.
The third reason discussed was that abolition of interspousal immunity might result in fraud and collusion between the parties. The court found this reason the most persuasive but nonetheless concluded:
We think the courts can control this [fraud and collusion], however, and the attorneys for the insurance company will, we are sure, be quick to detect and bring to the court’s attention any evidence of collusive conduct by the parties.
132 Ariz. at 451, 646 P.2d at 882.
The final reason considered was the status of Arizona as a community property state. The court noted that in the case of Jurek v. Jurek, 124 Ariz. 596, 606 P.2d 812 (1980), it held that while certain damages recoverable in a tort action constituted community property {i.e., lost wages and medical expenses), compensation for injuries to one’s personal well-being (i.e., pain and suffering) are the injured spouse’s separate property. The concern here is that the wrongdoing spouse should not be entitled to benefit as a result of his wrong. Delozier v. Smith, supra. That is, recovery by the injured spouse for damages attributable to the community, in effect, compensates the wrong-doing spouse. The court recognized this concern:
If interspousal disability is removed there will be some problems in adjusting to the new rule. We do not perceive that these will be formidable, and, in any event, are not a justification for clinging to a rule of law that has long since outlived its vigor.
132 Ariz. at 451, 646 P.2d at 882.
While all of the above reasons for retaining the doctrine of interspousal tort immunity, to one degree or another, lend support for retaining the doctrine of imputed spousal negligence, the reason most always averred to is that of preventing a wrong-doer from benefiting from his wrong. See Silvestri v. Hurlburt, 26 Ariz.App. 243, 547 P.2d 514 (1976); Delozier v. Smith, supra. We feel the supreme court’s discussion of this issue, in the context of the abolition of *517 interspousal tort immunity, is likewise dis-positive of its support for retaining the doctrine of imputed spousal negligence.
Therefore we conclude that the underlying rationale for retaining the doctrine of imputed spousal negligence has been abrogated by our supreme court in Fernandez. Nevertheless, we are hesitant to hold that the supreme court has “impliedly” abolished the doctrine of imputed spousal negligence. See McKay v. Industrial Commission, 103 Ariz. 191, 438 P.2d 757 (1968) (disaffirming of prior decisions of a state’s highest court is a question to be addressed only by that court). However, a review of the factual scenario presented in Fernandez leads us to the conclusion that the supreme court necessarily abolished the doctrine of imputed spousal negligence in reaching its decision.
Prior to Fernandez, the doctrine of imputed spousal negligence was applied only in cases in which the injured, nonwrongdoing spouse was seeking recovery from a third party, not the wrongdoing spouse. See e.g., Silvestri v. Hurlburt, supra; Delozier v. Smith, supra. This was because the doctrine of interspousal tort immunity simply barred any suit by one spouse against the other. See e.g., Huebner v. Deuchle, 109 Ariz. 549, 514 P.2d 470 (1973); Schwartz v. Schwartz, 103 Ariz. 562, 447 P.2d 254 (1968). However, the doctrine of imputed spousal negligence would likewise prevent recovery by the injured spouse from the wrongdoing spouse since imputation of negligence would nullify the injured spouse’s claim.
In Fernandez, a wrongful death action was brought for the benefit of the surviving children of Mrs. Ashford. The personal representative bringing the action was subject to any defenses that could be asserted had Mrs. Ashford lived and brought an action herself. A.R.S. § 12-611. These would include both the defenses of interspousal tort immunity and imputed spousal negligence. In setting aside the motion for summary judgment, the supreme court explicitly abolished the doctrine of interspousal tort immunity and impliedly, though necessarily, abolished the doctrine of imputed spousal negligence.[1]
We, therefore, conclude that the doctrine of imputed spousal negligence has been abolished in Arizona.[2] Accordingly, we find that the trial court erred by instructing the jury that any negligence on the part of John Woodruff was to be imputed to the personal representative of Dianna Woodruff’s estate on the wrongful death claim.
Appellee claims that despite the trial court’s error in instructing the jury as to imputed spousal negligence, such error is nonprejudicial, constituting harmless error. See Rule 61, Arizona Rules of Civil Procedure. It is appellee’s position that the jury did not even reach the question of imputed spousal negligence, since they found against Brent Woodruff in his claim against appellee. Since Brent’s claim was not subject to the defense of contributory negligence, appellee maintains the jury necessarily concluded that decedent Kelly Boyle was either not negligent or that any *518 negligence on his part was not a proximate cause of the accident.
We agree that the jury’s verdict against the claim of Brent Woodruff renders giving of the imputed spousal negligence instruction harmless. Although the claim of the estate of Dianna Woodruff and that of Brent Woodruff are separate claims, they were consolidated for trial and tried before the same jury. While it may be possible that cases tried separately, though arising from the same facts, may result in inconsistent verdicts, see Simkins v. Pulley, 116 Ariz. 487, 569 P.2d 1385 (App.1977); Spettigue v. Mahoney, 8 Ariz.App. 281, 445 P.2d 557 (1968), verdicts in cases consolidated for trial must be consistent. Simkins v. Pulley, supra. As this court noted in Simkins:
If separate juries have been involved, it is quite possible that the different juries would have differently assessed the credibility of the witnesses, and perhaps would have drawn different inferences from the facts where different inferences were permissible. These possible variations in results are always inherent possibilities when factual resolutions are submitted to different fact-finding bodies. But, where only one fact-finding body is involved, any such variations resulting in inconsistent verdicts can only be the result of the jury’s caprice and whim, involving complete disregard of the court’s instructions and the jury's duty.
116 Ariz. at 490, 569 P.2d at 1388.
We decline to presume that the jury might have returned a verdict in favor of Dianna Woodruff’s estate had it not been instructed on the doctrine of imputed spousal negligence. To do so we would have to presume the jury might have acted out of caprice or whim and in complete disregard of the court’s instructions. In light of the jury’s verdict in favor of appellee on the claim of Brent Woodruff, the only consistent verdict possible in the claim on behalf of Dianna Woodruff’s estate was for appellee and against the estate. Moreover, we have reviewed the court’s instructions to the jury and find that the court clearly and effectively limited the imputed spousal negligence instruction to the claim of Dianna Woodruff’s estate, thereby negating any possibility that the jury may have considered the instruction in deliberating upon Brent Woodruff’s claim.
Accordingly, we find that the trial court’s instruction on imputed spousal negligence constitutes harmless error.
The second issue raised by appellant is whether the trial court erred in failing to grant a directed verdict in favor of appellant and against appellee in the claim brought on behalf of Brent Woodruff for his personal injuries.
A directed verdict may only be granted where there is no evidence introduced which would justify a reasonable person in returning a verdict for the opposing party. Rocky Mountain Fire and Casualty Company v. Biddulph Oldsmobile, 131 Ariz. 289, 640 P.2d 851 (1982); Matson v. Naifeh, 122 Ariz. 360, 595 P.2d 38 (1979). Additionally, a directed verdict admits the truth of all the evidence introduced by the party opposing the motion, including all reasonable inferences that could be drawn from the evidence. Rocky Mountain, supra; Matson v. Naifeh, supra; Byrns v. Riddell, Inc., 113 Ariz. 264, 550 P.2d 1065 (1976). As an appellate court we must view all the evidence in the light most favorable to the party opposing the motion. Rocky Mountain, supra; Jackson v. H.H. Robertson Company, Inc., 118 Ariz. 29, 574 P.2d 822 (1978); W.R. Skousen Contractor, Inc. v. Gray, 26 Ariz.App. 100, 546 P.2d 369 (1976).
Initially we reject appellee’s apparent claim that the jury could have found either that Kelly Boyle was not negligent or that any negligence on his part was not a proximate cause of Brent Woodruff’s injuries. Under the facts of this case, we find that had the jury concluded Kelly Boyle was negligent in operating his jeep, it would necessarily have had to find that his negligence was a proximate cause of the collision and Brent Woodruff’s ensuing injuries. See Griffith v. Valley of the Sun *519 Recovery and Adjustment Bureau, Inc., 126 Ariz. 227, 613 P.2d 1283 (App.1980); Zelman v. Stauder, 11 Ariz.App. 547, 466 P.2d 766 (1970). We therefore conclude that the jury had to conclude Kelly Boyle was not negligent.
A crucial issue at trial was the speed of the jeep as it approached McClellan Road. The posted speed limit in the area of Alma School Road and McClellan was 40 miles per hour (m.p.h.) Conflicting testimony concerning the speed of the jeep was presented at trial. William Grant testified on behalf of appellant. Mr. Grant testified that at the time of the accident he was driving a pickup truck southbound on Alma School Road preparing to make a left turn onto Harvest Road, which is two blocks south of McClellan. Mr. Grant stated that he had to wait for several cars to pass prior to negotiating his turn. One of them was the Boyle jeep. Mr. Grant testified that the jeep approached at a high rate of speed. He estimated the speed of the jeep at between 60 and 75 m.p.h. at the time it passed him.
Deputy Sheriff Donald Palmer of the Maricopa County Sheriffs office also testified on behalf of appellant. He stated that, based upon the results of his investigation (which included measuring of skid marks and examination of each vehicle), he estimated the speed of the jeep at 65 m.p.h. just prior to impact. Deputy Palmer was extensively cross-examined by counsel for appellee. As a result of this cross-examination, Deputy Palmer stated that he was not a qualified expert at the time his investigation was conducted, although he stated that his speed estimates were verified by a Lieutenant May. Counsel also brought out the fact that Palmer’s report did not make reference to a written statement given by a witness to the accident as well as an oral or written statement of another witness. This impeachment may have resulted in the jury giving less weight to Deputy Palmer s testimony.
Two witnesses testified on behalf of appellees as to the speed of the jeep prior to the accident; both were passengers in the jeep. Debbie Isley testified that she believed the jeep was going approximately 45 m.p.h. just before the collision. Appellants’ counsel cross-examined Ms. Isley, confronting her with a statement she allegedly made to Deputy Palmer following the accident. Ms. Isley denied telling Palmer that she was concerned with the speed of the jeep and that, as a result, she had her eyes shut and was praying just before the collision. Ms. Isley testified on direct examination that she was in fact praying but did not do so for any particular reason.
Jeannine Cerney also testified as to the speed of Boyle’s jeep. Mrs. Cerney was seated in the front passenger seat of the jeep. She estimated the speed of the jeep at 45 to 50 m.p.h.
The evidence presented at trial clearly indicates that Kelly Boyle was driving at a speed greater than the posted speed limit. Violation of a statute enacted for public safety is “negligence per se.” Kauffman v. Schroeder, 116 Ariz. 104, 568 P.2d 411 (1977). However, driving over the posted speed limit merely creates a rebut-table presumption that the speed was greater than reasonable and prudent. See A.R.S. §§ 28-701 [3], 702 and 703; State v. Rich, 115 Ariz. 119, 563 P.2d 918 (App.1977). Appellee was entitled to overcome the presumption by presenting evidence that Kelly Boyle’s speed was reasonable and prudent under the circumstances.[4] See State v. Rich, supra.
William Grant testified that the typical speed on Alma School Road near the collision site was 40 to 50 m.p.h. Jeannine *520 Cerney indicated that the normal speed at that location was 45 to 50 m.p.h.
Additionally, appellee presented the testimony of Robert Sparks. Mr. Sparks testified that he lived near the intersection of Alma School Road and McClellan at the time of the accident. Mr. Sparks stated that he heard the crash, ran out to the accident scene, and saw John Woodruff. The following exchange took place upon direct examination:
Q. How soon after you got there did you see Mr. Woodruff?
A. Immediately when I got out there.
Q. Immediately? Did you hear him say anything right out there at the scene?
A. Yes, sir.
Q. Tell the jury what you heard him say?
A. He said it was my fault. I turned in front of him. Would- somebody please help my wife.
Viewing the evidence in a light most favorable to appellee, we find that it was possible that the jury chose to believe the speed estimates of appellee’s witnesses and concluded that Boyle’s speed was not greater than reasonable and prudent and that John Woodruff was solely negligent in turning in front of Boyle’s oncoming jeep.
Another important issue litigated at trial was whether Kelly Boyle was driving while under the influence of intoxicating liquor at the time of the fatal collision. Appellants presented evidence that Kelly Boyle’s blood alcohol level, at the time of his death, was .17%. A.R.S. § 28-692[5] makes it unlawful for a person to drive a motor vehicle within the state while under the influence of intoxicating liquor. A person with a blood alcohol level of .10% or greater is rebuttably presumed to be under the influence. See A.R.S. § 28-692(B)(3). Once again, a violation of the statute constitutes “negligence per se.” Kauffman v. Schroeder, supra.
The jury would be required to find Kelly Boyle was negligent if they found his blood alcohol level was in fact greater than .10% and if he failed to overcome the statutory presumption of impairment.
At trial, county toxicologist Ramon Morano testified that he performed a test on a blood sample drawn from the body of Kelly Boyle, resulting in his finding that the blood alcohol level was .17% at the time of death. The test was administered a second time with the same results. There was no evidence presented to refute this finding and counsel for appellee did not succeed in impeaching Mr. Morano’s test results. Nonetheless, the jury could consider “other evidence” presented by appellee to overcome the statutory presumption of impairment. See A.R.S. § 28 — 692(B)(4).
Appellee presented the testimony of several witnesses, all of whom stated that Kelly Boyle showed no signs of intoxication immediately preceding the tragic accident. John Cerney testified that he had been a passenger in the Boyle jeep just prior to the accident and was of the opinion that Kelly Boyle’s driving and handling of the vehicle were normal. He also testified that he suggested that his wife, Jeannine, take a ride with Kelly Boyle. Guy Isley also testified on behalf of appellee, stating that he and Kelly Boyle had played two games of ping pong shortly before the accident, that Kelly Boyle showed no signs of being intoxicated, and that he permitted his daughter, Debbie Isley, to ride in Boyle’s jeep. Jeannine Cerney testified that Kelly did not appear to be intoxicated and seemed to control his vehicle in a normal manner. Debbie Isley also testified that Kelly Boyle did not drive erratically and did not appear to be intoxicated. It is arguable as to whether the testimony of these witnesses overcame the statutory presumption of impairment. However, we find the issue was properly submitted to the jury. See Vigil v. Herman, 102 Ariz. 31, 424 P.2d 159 (1967); Lancaster v. Chemi-Cote Perlite Corp., 20 Ariz.App. 229, 511 P.2d 673 (1973).
*521 Based upon the foregoing, we conclude that the trial court did not err in denying appellant’s motion for a directed verdict as to the liability issue in the claim brought on behalf of Brent Woodruff.
The final issue we must address is whether appellant was improperly precluded from introducing evidence that three witnesses testifying at trial had entered into a settlement agreement with appellee prior to trial. The agreement allegedly provided that Boyle’s insurance carrier would “loan” a certain sum of money to the witnesses, but that appellee would remain as a defendant in the lawsuit pending at the time of the Gibson trial. Appellee was to defend on the issue of liability, but would not present evidence nor argument relating to the amount of damages. Should a joint and several recovery against both John Woodruff and appellee result, it was agreed that the witnesses would not execute or attempt to recover any additional sums of money from appellee or Boyle’s insurance carrier. This alleged agreement was a variation of the so-called “Gallagher Agreements”. See e.g., City of Tucson v. Gallagher, 108 Ariz. 140, 493 P.2d 1197 (1972); Sequoia Manufacturing Company, Inc. v. Halec Construction Company, Inc., 117 Ariz. 11, 570 P.2d 782 (App.1977).
Appellant has failed to cite to the record in support of his contention that the trial court wrongfully precluded him from introducing evidence pertaining to the alleged agreement. An appellant must specify with particularity and with transcript reference such rulings of the trial court as he desires to question on appeal. Gangadean v. Byrne, 16 Ariz.App. 112, 491 P.2d 501 (1971). This court is not obligated to search the record to ascertain if appellant has properly raised an objection below. See Hubbs v. Costello, 22 Ariz.App. 498, 528 P.2d 1257 (1974). Appellant has failed to indicate whether he sought a ruling by the trial court on the issue now presented for review, simply concluding the trial court erred in not allowing him to present evidence of the agreement. Cf. Modular Systems, Inc. v. Naisbitt, 114 Ariz. 582, 562 P.2d 1080 (App.1977) (failure to state with particularity why or how trial court erred in making rulings and simply concluding error was committed is same as not arguing an issue raised on appeal and is deemed abandoned).
Nevertheless, and although we are not obligated to do so, we have reviewed the record and find that the issue was not properly raised below. There are no motions or verbal exchanges in the record pertaining to the agreement. The only discussion of the agreement is found in closing argument of counsel and in a discussion at the bench during counsel’s closing. This was after all of the witnesses had testified and had been cross-examined. Even at this late point, no objection was made to the court’s order that counsel was not to refer to the agreement in closing.
We conclude that this issue is not properly presented for review. See Sequoia Manufacturing, supra.
Judgment affirmed.[6]
CONTRERAS, P.J., and FROEB, J., concur.

. We note that the Arizona Supreme Court had before it on summary judgment only the issue of interspousal tort immunity. Nevertheless, the court could have affirmed the trial court’s granting of summary judgment on grounds not explicitly considered below. See Rhoads v. Harvey Publications, Inc., 131 Ariz. 267, 640 P.2d 198 (App.1981); see also, Herm v. Stafford, 663 F.2d 669 (6th Cir.1981); Sellers v. Regents of the University of California, 432 F.2d 493 (9th Cir.1970), cert. denied, 401 U.S. 981, 91 S.Ct. 1194, 28 L.Ed.2d 333 (1971); 10 Wright and Miller, Federal Practice and Procedure, § 2716 p. 658 (1983). Since the doctrine of imputed spousal negligence would constitute a legal bar to the wrongful death action, there would be no reason to remand, there being no conceivable facts which would allow the non-moving party to prevail on this issue. See Rhoads v. Harvey Publications, Inc., supra.

. We note that Division Two of this court has reached a contrary conclusion in Spillios v. Green, 137 Ariz. 443, 671 P.2d 421 (Ariz.App.1983). Division Two apparently reads Fernandez as abolishing imputed spousal negligence only in actions in which one spouse is suing the other. We see no reason to so limit its application.

. A.R.S. § 28-701 was amended by Laws 1982, ch. 77, § 1.

. A.R.S. § 28-701(A) provides that "[i]n every event” speed shall be controlled so as to avoid colliding with another vehicle on the highway in compliance with legal requirements. The jury could reasonably conclude the Woodruff vehicle was not in compliance with legal requirements when it attempted to turn in front of Boyle’s oncoming vehicle. See A.R.S. § 28-772.

. A.R.S. § 28-692 was amended by Laws 1978, ch. 207, § 1 and Laws 1982, ch. 234, § 7.

. Based upon our disposition of this case, we find it unnecessary to address the issue of whether the trial court erred in refusing to submit a gross negligence instruction to the jury-